GRAND ENTERTAINMENT GROUP, LTD.; Entertainment Industries, Inc.

v.

STAR MEDIA SALES, INC.; Esther Freifeld Rivera; Raphael Rivera; Littman Wyckoff Agency; Littman, Freifeld, Marshak, Wykoff; Marshak–Wyckoff & Associates; Nostra, S.A.; Ricardo Sanz, S.A.; Ricardo Sanz Perez; Sergio Lieman; Robert Littman; Robert Littman Co., Inc.

Nostra, S.A., Ricardo Sanz, S.A. and Ricardo Sanz Perez, Appellants.

No. 92–1272.

United States Court of Appeals, Third Circuit.

Argued Sept. 21, 1992.

Decided March 19, 1993.

Janet S. Kole (argued), Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, PA, for appellants.

E. Parry Warner (argued), Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, PA, for appellees Grand Entertainment Group, Ltd. and Entertainment Industries, Inc.

Before: HUTCHINSON, ALITO and SEITZ, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

Appellants, Nostra, S.A., Ricardo Sanz, S.A. and Ricardo Sanz Perez (Sanz Perez) (collectively "the Spanish defendants"), appeal a final order of the United States District Court for the Eastern District of Pennsylvania denying their motion to set aside a default judgment entered against them. In their motion, the Spanish defendants contended, in part, that process had not been properly served and the district court's exercise of *in personam* jurisdiction over them violated due process. The district court decided the Spanish defendants had the minimum contacts with the forum that are necessary to satisfy due process and held service of process proper under Spanish law pursuant to Federal Rule of Civil Procedure 4(i), as well as under Pennsylvania Rule of Civil Procedure 402(a)(2)(iii) as incorporated by Federal Rule of Civil Procedure 4(e). The district court's holding that service was proper under Pennsylvania law was entered after it granted Appellees Grand Entertainment Group, Ltd. and Entertainment Indus-tries, Inc.'s (collectively "Grand") motion for alternative service of process.

We hold that Grand's service of process was insufficient to satisfy either Pennsylvania Rule of Civil Procedure 402 or the relevant provisions of Spanish law concerning service that Federal Rule of Civil Procedure 4(i) incorporates. Accordingly, we will vacate the order of the district court denying the Spanish defendants' motion for reconsideration and remand the case with instructions to remove the default judgment entered against them.

The district court had subject matter jurisdiction over this action under 28 U.S.C.A. § 1332 (West Supp.1992) and 18 U.S.C.A. § 1964(c) (West 1984). We have appellate jurisdiction over the final order of the district court pursuant to 28 U.S.C.A. § 1291 (West Supp.1992).

### I.

This dispute arises out of an alleged contract to sell the rights to 450 foreign films. Grand filed a complaint in the United States District Court for the Eastern District of Pennsylvania in 1986 asserting four grounds for relief. Grand contended that the defendants' failure to deliver the rights to the films in question constituted a breach of contract and, because the defendants did not actually have some of the rights they contracted to deliver, that they committed a fraud actionable under RICO.

Grand attempted to effect service on the Spanish defendants in Madrid, Spain in July 1987. The Spanish defendants failed to respond. Accordingly, the clerk of the district court entered a default judgment in favor of Grand on October 5, 1987. In November 1989, after a hearing on damages, the magistrate judge to whom the case was assigned issued a report recommending entry of a default judgment exceeding $34,421,250.00. The Spanish defendants did not receive notice of the hearing and did not attend.

In December 1989, Grand filed a motion to approve the magistrate judge's report and recommendation. The Spanish defendants then entered the action and filed a motion to open or set aside the default for

lack of service, lack of personal jurisdiction and the existence of a meritorious defense. In an order dated March 12, 1991, the district court conditionally granted Grand's motion and denied the Spanish defendants' motion. The district court held that Grand had properly effected service under Spanish law in accord with Federal Rule of Civil Procedure 4(i) and that it had personal jurisdiction over the Spanish defendants. The district court also decided, however, that the default would be lifted if the Spanish defendants satisfied five conditions:

(1) Accept service of process and forgo any future challenges on this basis without waiving any future personal jurisdiction challenge.

(2) Pay the costs incurred in the litigation to date, including Grand's attorneys' fees attendant to the entry of the default, the damages hearing, and the lifting of the default.

(3) Have Sanz Perez appear for deposition at his own expense in the United States.

(4) Post a bond in the amount of $250,-000.00 to secure any eventual judgment and attendant costs.

(5) Post a bond in the amount of $50,-000.00 to secure any costs incurred in compliance with paragraph two.

*See* Brief for Appellees, Exhibit A at 3.

The Spanish defendants did not comply with these conditions and, in May 1991, Grand moved for confirmation of the defaults and a ruling upholding service on alternative grounds. The Spanish defendants requested reconsideration of the district court's March order. On June 7, 1991, the district court granted Grand's motion to confirm the defaults, denied its motion for a ruling upholding service on alternative grounds, and deferred ruling on the motion for entry of a default judgment setting damages in the amount recommended by the magistrate judge pending an evidentiary hearing.

On July 1, 1991, Grand filed a motion for reconsideration of the district court's denial of its motion for alternative rulings on the service of process issue. On March 20, 1992, the district court granted reconsideration and issued a new order granting Grand's motion for a ruling on alternative grounds. 787 F.Supp. 458. In doing so, it held that service of process was proper under Pennsylvania Rule of Civil Procedure 402(a)(2)(iii) as incorporated by Federal Rule of Civil Procedure 4(e), as well as under Federal Rule of Civil Procedure 4(i), incorporating Spanish law. In its March 20, 1992 decision, the district court also denied the Spanish defendants' motion for reconsideration and granted Grand's motion for entry of a default judgment in the amount of $11,473,750.00 plus attorneys' fees and costs in the amount of $56,166.85. The Spanish defendants filed a timely notice of appeal on April 30, 1992.

## II.

The Spanish defendants are two corporations incorporated under the laws of Spain, with offices in Madrid, and one individual who is a Spanish national residing in Spain. For the purpose of deciding the issues of personal jurisdiction and service of process that are now before us, it is sufficient to state that the merits of the dispute between the parties to this appeal concern a contract that Grand allegedly negotiated with the Spanish defendants under which Grand was to acquire certain rights in 450 foreign films.

In February of 1986, Grand, through its agent Matthew Wax (Wax), entered into negotiations with the Spanish defendants through their representative Esther Freifeld Rivera (Freifeld)[1] and Sanz Perez. Wax, as agent for Grand, maintained an office in Bala Cynwyd, Pennsylvania. Grand believed that the Spanish defendants owned rights in certain films and the negotiations centered around terms for purchase of the right to distribute foreign films in the United States and Canada. Wax traveled to Los Angeles on February 28, 1986 for a face to face meeting with Sanz Perez. With Wax in Pennsylvania,

---

**1.** Freifeld is a partner in a California law firm. The district court determined that she was an agent of the Spanish defendants, a conclusion unchallenged on appeal.

Freifeld in California and Sanz Perez travelling between Spain and California, the parties exchanged some twenty-six telexes, at least twelve of which were sent to Wax in Pennsylvania. Wax also estimated that he spoke to Freifeld at least fifty times from Pennsylvania with Freifeld initiating forty to fifty percent of the calls. Whether these contacts resulted in a binding agreement is the subject of the underlying litigation.

After filing this action in the United States District Court for the Eastern District of Pennsylvania against the Spanish defendants and a number of California parties, Grand attempted to serve the defendants. Initially, Grand served Sanz Perez in Beverly Hills, California. After the district court decided that the damages clause in the complaint violated Local Rule 30, Grand revised its complaint and attempted to serve Sanz Perez again but could not locate him in the United States. Grand then attempted service by registered mail after verifying Sanz Perez's address through a phone call. The envelopes were returned unopened.

On January 16, 1987, Grand amended its complaint to substitute certain California defendants. On January 20, Grand tried unsuccessfully to serve the amended complaint on all the Spanish defendants by registered mail through the office of the clerk of the district court. In April 1987, Grand retained a Spanish attorney, Elizabeth Powers (Powers), to effectuate service on the Spanish defendants in Spain. Grand forwarded Powers the most recent addresses of the Spanish defendants.[2] Powers had the summons and complaint translated into Spanish and conveyed a copy to an office of the Spanish Notaries Public with directions for them to serve the defendants at the address provided.

The office building located at Gran Via 40, in which the Spanish defendants rent space, has a common entrance where a telephone operator/receptionist (the "build-ing receptionist") receives visitors, messages and correspondence for the tenants of the building. The building receptionist regularly performs these duties for the tenants when their offices are closed as well as when they are open. The owner of the office building employs the building receptionist.

On July 24, 1987, a Spanish notary attempted to serve the Spanish defendants. The building receptionist informed the notary that the Spanish defendants maintained offices in the building but were on vacation at the time. The notary delivered the complaint and summons to the receptionist who agreed to deliver the documents to the Spanish defendants upon their return. Powers then obtained proofs of service from the notary and informed Grand that service had been properly effected under Spanish law.

Grand followed this attempt at service with a number of Federal Express letters and Telexes to both of the addresses it had obtained for the Spanish defendants informing them that service had been completed and that default would result if they did not take action.

While Grand attempted service on the Spanish defendants, the litigation went forward as to the California defendants. In 1988, an attorney, Carl Kaminsky (Kaminsky), attended a deposition of one of the California defendants. The record of this deposition listed Kaminsky as counsel not only for Sergio Lieman, another Spanish defendant, but also for Sanz Perez. Kaminsky's participation in the taking of this deposition was at best limited. There is no other indication that the Spanish defendants were represented until they challenged the default judgment entered against them in December 1989.

### III.

On this appeal, the Spanish defendants challenge the district court's assertion of

---

2. Two possible Madrid addresses were forwarded to Powers. Sanz Perez's business cards listed Doce de Octubre 28 as his business address while other correspondence originated from Gran Via 40.

The Iberian International Bureau of Credit Reporting Service lists the place of business of Sanz, S.A. and Nostra, S.A. as Gran Via 40, Madrid. Sanz Perez admits that this is also a valid address for him as an individual.

personal jurisdiction under the Due Process Clause of the Fourteenth Amendment as well as service of process. Factual conclusions as to minimum contacts are reviewed under a clearly erroneous standard. *Stranahan Gear Co. v. N.L. Indus., Inc.*, 800 F.2d 53, 56 (3d Cir.1986). Application of facts properly found to the governing legal principles receives plenary review. *Id.; see also Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 148 (3d Cir.1988).

 The Spanish defendants challenge the district court's determination that service of process on them complied with the Federal Rules of Civil Procedure. We exercise plenary review over issues concerning the propriety of service under Federal Rule of Civil Procedure 4. *Green v. Humphrey Elevator and Truck Co.*, 816 F.2d 877, 879 (3d Cir.1987). We review findings of fact necessary to the application of procedural rules, including Rule 4, under a clearly erroneous standard. *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir.1981).

## IV.

 We consider first the Spanish defendants' challenge to the United States District Court for the Eastern District of Pennsylvania's personal jurisdiction over them. Rule 4(e) of the Federal Rules of Civil Procedure gives a federal district court personal jurisdiction over non-resident defendants to the extent permissible under the state law of the jurisdiction where the court sits. Fed.R.Civ.P. 4(e). Pennsylvania has a so-called long arm statute. It provides in relevant part:

**(b) Exercise of full constitutional power over non-residents.**—In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

42 Pa.Cons.Stat.Ann. § 5322(b) (Purdon 1981). This statute reaches as far as the Due Process Clause of the Fourteenth Amendment to the United States Constitution permits. *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir.1984).

In this case, we are concerned with personal jurisdiction for the specific purpose of deciding this case.[3] In that context our due process analysis has two parts. We first consider whether the Spanish defendants had minimum contacts with Pennsylvania "such that [the defendants] should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 690 (3d Cir.) (per curiam), *cert. denied*, 498 U.S. 847, 111 S.Ct. 133, 112 L.Ed.2d 101 (1990). "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). If minimum contacts are present, we then look to see whether the district court's exercise of personal jurisdiction over the Spanish defendants "accords with the notions of 'fair play and substantial justice.'" *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 701 (3d Cir.1990) (quoting *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158).

 In *Burger King*, the United States Supreme Court analyzed the limits due process places on a court's exercise of personal jurisdiction over parties defendant.

---

**3.** Due process may also be satisfied by so-called "general jurisdiction." General jurisdiction exists where the defendant "has maintained 'continuous and substantial' forum affiliations." *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 588 (3d Cir.1982).

Unlike the case before this court, this basis is used "when the claim does not arise out of or is unrelated to the defendant's contacts with the forum." *Dollar Sav. Bank v. First Sec. Bank of Utah*, 746 F.2d 208, 211 (3d Cir.1984).

Jurisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State. Thus where the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King,* 471 U.S. at 475–76, 105 S.Ct. at 2183–84 (emphasis in original) (footnote and citations omitted). The defendant must engage in some affirmative act "by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958) (citation omitted). Once a proper jurisdictional objection is raised, the plaintiff bears the burden of proving the facts necessary to establish the minimum contacts the Constitution requires. *Time Share,* 735 F.2d at 63.

■ A contract may provide a basis for the exercise of personal jurisdiction that meets due process standards, but a contract alone does not "automatically establish sufficient minimum contacts in the other party's home forum...." *Burger King,* 471 U.S. at 478, 105 S.Ct. at 2185. Courts must also look to "prior negotiations and contemplated future consequences." *Id.* at 479, 105 S.Ct. at 2185. Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction. *Mesalic,* 897 F.2d at 701; *see also Quill Corp. v. North Dakota by and through Heitkamp,* —— U.S. ——, ——, 112 S.Ct. 1904, 1910, 119 L.Ed.2d 91 (1992) ("[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines...." (quoting *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184)).

■ This Court has recently decided that contract negotiations with forum residents can empower a court to exercise personal jurisdiction over persons outside the forum. In *Carteret Savings Bank, FA v. Shushan,* 954 F.2d 141, 147–48 (3d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992), we held that telephone calls and correspondence sent into New Jersey from Louisiana by the representative of a Louisiana real estate developer, coupled with a meeting in New Jersey to facilitate the closing of a loan provided the minimum contacts needed to satisfy due process. *Id.* (citing *Lebel v. Everglades Marina, Inc.,* 115 N.J. 317, 558 A.2d 1252, 1256 (1989) (personal jurisdiction where only transactional contacts consisted of telephone calls and mailing of sales agreement)); *see also Taylor v. Phelan,* 912 F.2d 429, 433 n. 4 (10th Cir.1990) ("So long as it creates a substantial connection, even a single telephone call into the forum state can support jurisdiction."), *cert. denied,* —— U.S. ——, 111 S.Ct. 786, 112 L.Ed.2d 849 (1991). In *Mellon Bank (East) PSFS, National Association v. Farino,* 960 F.2d 1217 (3d Cir.1992), we stated once more that we will take a "highly realistic" approach to analyzing minimum contacts that looks to, *inter alia,* "prior negotiations and contemplated future consequences, along with the terms of the contract...." *Id.* at 1224 (emphasis omitted) (quoting *Burger King* 471 U.S. at 479, 105 S.Ct. at 2185). Due process does not require a defendant's physical presence in the forum before personal jurisdiction is exercised. *See Quill Corp.,* —— U.S. at —— ——, 112 S.Ct. at 1910–11; *North Penn Gas,* 897 F.2d at 691.

Under these cases, we think the Spanish defendants have had the minimum contacts with Pennsylvania that are necessary to permit the district court to exercise jurisdiction over them. Sanz Perez, in his individual and corporate capacity, directed at least twelve communications to the forum. Perez also engaged in negotiations for an agreement that would have created rights

and obligations among citizens of the forum and contemplated significant ties with the forum. Thus, Sanz Perez deliberately and personally directed significant activities toward the state. *See Burger King,* 471 U.S. at 475–76, 105 S.Ct. at 2183–84; *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). In addition, as agent for Sanz Perez, Freifeld also initiated numerous contacts with Wax over the telephone and through the mails. Activities of a party's agent may count toward the minimum contacts necessary to support jurisdiction. *Taylor,* 912 F.2d at 433–44; *Sher v. Johnson,* 911 F.2d 1357, 1362 (9th Cir.1990).

■ Moreover, the instant dispute arises directly out of the contacts at issue. Where the contacts evaluated are those that give rise to the litigation, even one contact with the forum may be enough to justify jurisdiction as long as the other criteria are met. *See Burger King,* 471 U.S. at 475 n. 18, 105 S.Ct. at 2184 n. 18. Sanz Perez's personal, intentional communications gave rise to the underlying suit. He voluntarily decided to negotiate with Wax and cannot now be heard to complain about answering a suit concerning the effect of negotiations in the jurisdiction in which some of those negotiations occurred.

■ We must still consider, however, whether the district court's exercise of jurisdiction over the Spanish defendants squares with notions of "fair play and substantial justice." *See Mesalic,* 897 F.2d at 701 (quoting *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158). The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy. Once the plaintiff has made out a prima facie case of minimum contacts, as here, "the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Carteret Sav. Bank,* 954 F.2d at 150 (quoting *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2185). To decide whether the Spanish defendants have made their case, we consider the following factors: "the burden on the defendant, the interests of the forum State, ... the plaintiff's interest in obtaining relief[,] ... 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies[,] and the shared interest of the several States in furthering fundamental substantive social policies.'" *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) (quoting *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564).

The United States Supreme Court has recognized that defending a lawsuit in a foreign land is a burden that should be considered. *Asahi,* 480 U.S. at 114, 107 S.Ct. at 1033 ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."); *cf. Mesalic,* 897 F.2d at 701. As the Court noted, however, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi,* 480 U.S. at 114, 107 S.Ct. at 1033. Here, we believe the burden of defending this action in Pennsylvania is not great enough to deprive the Spanish defendants of the right to fair play and substantial justice that lies at the heart of the Due Process Clause. Sanz Perez has shown his ability to conduct business in the United States and has actively carried on substantial activities here. This is not a case where a party without a significant presence or ability to act in the United States is drawn into litigation as a result of acts outside the forum. *See id.* at 111–12, 107 S.Ct. at 1031–32. Moreover, Pennsylvania has an interest in protecting its residents from the kind of conduct Grand claims the Spanish defendants engaged in. *See Burger King,* 471 U.S. at 482–83, 105 S.Ct. at 2187–88; *see also McGee,* 355 U.S. at 223, 78 S.Ct. at 201 (states often have a "manifest interest in providing effective means of redress for its residents"). In *Asahi,* only non-forum actors were concerned with the claim in issue. In the instant case, a forum plaintiff seeks redress for harm allegedly caused by or on behalf of the activi-

ties of the Spanish defendants within the forum. Finally, there is no evidence that another state or nation could better preserve the rights of the litigants or has an interest superior to that of Pennsylvania. The fact that some of the negotiations for the proposed film distribution contract took place in California is insufficient to deny courts located in Pennsylvania the power to adjudicate whatever rights and duties the Spanish defendants may have as a result of their interest in the proposed contract.[4]

This is not a situation where the non-forum resident was unilaterally drawn into the forum by another. *See World–Wide Volkswagen*, 444 U.S. at 295, 100 S.Ct. at 566; *Time Share*, 735 F.2d at 65. Instead, the affirmative actions of Sanz Perez, his agents and his corporations brought him in contact with Pennsylvania in connection with ongoing contract negotiations with a forum based entity that lasted at least four months. We therefore conclude that the defendants have not shown that defending themselves in a Pennsylvania forum would be so unreasonable that it would deprive them of their right to fair play and substantial justice. *See Carteret Sav. Bank*, 954 F.2d at 150.

Accordingly, the district court's assertion of *in personam* jurisdiction comports with due process.

## V.

Our inquiry cannot end, however, with a determination that the demands of due process are met. Valid service is also necessary to the district court's exercise of personal jurisdiction over the Spanish defendants. Therefore, we now turn to the issues this appeal raises concerning service of process. Grand asserts alternately that service on the Spanish defendants was proper either under Federal Rule of Civil Procedure 4(e), incorporating the law of the forum state on service, or Rule 4(i), permitting service in accord with the law of the foreign country in which service is attempted.

## A.

We consider first Federal Rule of Civil Procedure 4(e). It provides that foreign defendants may be served by any means provided by state law.[5] Pennsylvania Rule of Civil Procedure 404 provides for service outside the Commonwealth. Rule 404(1) authorizes service "by a competent adult who is not a party in the manner provided by Rule 402(a)." Pa.R.Civ.P. 404(1).[6] Rule 402(a)(2)(iii) provides for service upon a defendant by handing a copy of the summons and complaint "at any office or usual place of business of the defendant to his agent or *to the person for the time being in charge thereof.*" Pa.R.Civ.P. 402(a)(2)(iii) (emphasis added). The district court held that the receptionist at the Spanish defendants' office building was a "person in charge" within the meaning of the

---

**4.** Pennsylvania courts have recognized such a state interest where there exist obligations entered into by a foreign corporation that have economic impacts on state commerce. *See Proctor & Schwartz, Inc. v. Cleveland Lumber Co.*, 228 Pa.Super. 12, 323 A.2d 11, 16 (1974), *abrogated on other grounds, Kubik v. Letteri*, 532 Pa. 10, 614 A.2d 1110 (Pa.1992).

**5.** Federal Rule of Civil Procedure 4(e) states in relevant part:

(e) **Summons: Service Upon Party Not Inhabitant of or Found Within State.** Whenever a statute of the United States or an order of court thereunder provides for service of a summons ... upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule. Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons ... upon a party not an inhabitant of or found within the state, ... service may in either case be made under the circumstances and in the manner prescribed in the statute or rule. Fed.R.Civ.P. 4(e)(1).

**6.** The Pennsylvania rules of procedure governing service have been amended a number of times. The applicable version of Rules 400–425 was promulgated in 1985 by the Pennsylvania Supreme Court. The differences between the version applicable to this case and, except where noted, the versions discussed in the cases we cite do not appear to be material to the issue before us.

Pennsylvania rule.[7]

The propriety of service under Pennsylvania law commonly depends upon the relationship between the person receiving process and the party to the litigation. Thus, the secretary of a defendant may meet the statutory definition of a proper party to be served. In *Hopkinson v. Hopkinson*, 323 Pa.Super. 404, 470 A.2d 981 (1984), *overruled on other grounds by Sonder v. Sonder*, 378 Pa.Super. 474, 549 A.2d 155 (1988), the court held a medical corporation's secretary who represented to the sheriff's deputies that she was in charge for the time being met the definition of "person for the time being in charge" under Pennsylvania Rule of Civil Procedure 2180 governing service of a writ of execution. Rule 2180 contained language similar to that in Rule 402. The court did not look beyond the affidavit of service to inquire whether the secretary was actually the individual in charge. *Id.* 470 A.2d at 986–87. Instead, it accepted the process server's representation that the secretary said she was in charge of the office. *Id.*

In *Trzcinski v. Prudential Property & Casualty Insurance Co.*, 409 Pa.Super. 114, 597 A.2d 687 (1991), the court interpreted a similar provision on service, Rule 424(2), and held that service upon a receptionist who worked for a law firm whose only client was the defendant corporation did not constitute service upon a "person for the time being in charge." *Id.* 597 A.2d at 689. In the course of its opinion, the court said it doubted that a receptionist met the statutory definition. It stated: "While we are not prepared to say that a receptionist can *never* be deemed to be a 'person for the time being in charge' of a regular place of business for a corporation for purposes of Rule 424(2), we find no indication that this is such a case." *Id.* (emphasis in original).

In *Comyn v. Southeastern Pennsylvania Transportation Authority*, 141 Pa. Cmwlth. 53, 594 A.2d 857, 860 (1991), the process server failed to ascertain the official capacity of the individual receiving the service. The Commonwealth court held service improper under Rule 422(b)(2) relating to service upon the Commonwealth and its political subdivisions. That rule also permitted service upon the "person in charge." The court commented on the absence of any further textual definition of the phrase "person in charge." *Id.* 594 A.2d at 859.

In the instant case, Grand served process on a receptionist who did not work in the offices of the Spanish defendants and was not employed by them. Instead, she was a building employee who took messages for tenants while they were out of the office. The notary who attempted to deliver the process stated:

> [the receptionist] told me that ... [the Spanish defendants] are on vacation. Nevertheless, she did accept the sealed envelope of my office, which I offered to her, containing the documents which are the subject of this enjoinder, and which she undertook to forward to the addressee on the return from vacations.

Appellants' Appendix (App.) at 54.

In *Comyn*, the Sheriff stated that he gave the process to an individual in the party's reception area who he "assumed" was a receptionist. *Id.* at 860. We have not found any Pennsylvania decision that held service proper in the absence of a representation that the individual served had actual authority or a direct or claimed relationship with the party to the suit from which authority could be inferred. In *Trzcinski*, the court held that the relationship between a secretary of a law firm and the defendant who was a client of that law firm was too attenuated to fit within the statutory language of the rule. *Trzcinski*, 597 A.2d at 689. In *Hopkinson*, the secretary represented to the process server that she was the individual in charge at the moment and the court did not look behind that statement. *Hopkinson*, 470 A.2d at 986–87. In *Comyn*, the process server's failure to ascertain the capacity of the re-

---

7. There is no dispute that 40 Gran Via was the Spanish defendants' place of business for purposes of Rule 402.

cipient was fatal. *Comyn,* 594 A.2d at 860. By analogy to these cases, we hold that the "person for the time being in charge" of any office or usual place of business of the defendants for purposes of Pennsylvania Rule of Civil Procedure 402 must either be an individual with some direct connection to the party to be served or one whom the process server determines to be authorized, on the basis of her representation of authority, as evidenced by the affidavit of service. A "person for the time being in charge" should either derive or appear to derive authority from the party upon whom service is attempted. Here, the building receptionist did not work for the Spanish defendants nor did she represent that she did. The process server was not led to believe that any special relationship existed between the building receptionist and the Spanish defendants.

Grand suggests that we define "person in charge" of the business as the "person in charge" of the *place* of business (*i.e.,* an individual who has access and control over the premises). We see no support for this interpretation in Pennsylvania law. Moreover, its adoption would permit service after business hours upon janitors or repair people employed by or under contract with the landlords of the defendant parties. Our analysis of existing case law in the Pennsylvania intermediate appellate courts persuades us that service on such persons is not in accord with existing Pennsylvania law, and we therefore predict that the Pennsylvania Supreme Court would not authorize such an extension.

Grand persuaded the district court that the position urged by the Spanish defendants would lead to the anomalous result of having no one "in charge for the time being." One purpose of the technical rules of service is efficient resolution of issues concerning notice. *Romeo v. Looks,* 369 Pa.Super. 608, 535 A.2d 1101, 1105 (1987) (en banc), *allocatur denied,* 518 Pa. 641, 542 A.2d 1370 (1988). Because there may be times when a business is closed and no individuals associated with the enterprise are present to insure notice we do not think this outcome is at all anomalous. Grand points to no Pennsylvania authority that

would support the argument that a company must always have someone at its place of business who is amenable to service and we decline to impose such a requirement absent any intimation that Pennsylvania's highest court would do so.

The purpose behind the Pennsylvania rule on service is to provide notice that litigation has commenced. *See id.* We are unwilling to say that service on a building receptionist with no employment ties to the defendant satisfies this purpose. If the service requirements of Rule 402(a)(2)(iii) are to be met, we think that the individual receiving process must at least have, or appear to have, some position with the party to be served. The building receptionist does not qualify.

Accordingly, we hold the building receptionist in Madrid to whom the Spanish notary delivered the complaint and summons addressed to the Spanish defendants was not a person in charge of the office or place of business of the Spanish defendants, and service on her under Federal Rule of Civil Procedure 4(e) incorporating Pennsylvania Rule of Civil Procedure 402 was insufficient.

### B.

In the alternative, Grand contends service complied with Federal Rule of Civil Procedure 4(i). Rule 4(i) provides another method of service on persons who may be found in a foreign country. Inquiries into the problems attendant on service of process on persons in a foreign country under Rule 4(i) are not new to this Court. *See Umbenhauer v. Woog,* 969 F.2d 25 (3d Cir.1992) (foreign service on Swiss defendants by mail procedurally insufficient); *Lampe v. Xouth, Inc.,* 952 F.2d 697 (3d Cir.1991) (mail service on Swiss defendants insufficient); *DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280 (3d Cir.) (service on Japanese defendant under treaty), *cert. denied,* 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981). Despite this case law concerning service in accord with the law of various foreign jurisdictions under

Rule 4(i), the application of Rule 4(i) to this case is undecided.

We therefore begin our analysis with the text of the material portions of that rule. It provides, *inter alia,*

(1) *Manner.* When the federal or state law referred to in subdivision (e) of this rule authorizes service upon a party not an inhabitant of or found within the state in which the district court is held, and service is to be effected upon the party in a foreign country, it is also sufficient if service of the summons and complaint is made: (A) *in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction....*

Fed.R.Civ.P. 4(i)(1)(A) (emphasis added). To comply with 4(i), the relevant foreign jurisdiction must authorize service of process originating in jurisdictions foreign to it and that service must be made in compliance with the foreign jurisdiction's procedures. *See* Fed.R.Civ.P. 4(i)(1) advisory committee's note. Those procedures must also be "reasonably calculated to give actual notice of the proceedings to the party." *Id.* (citing *Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). Finally, the law of the foreign country determines the qualifications of the party who delivers service. Fed.R.Civ.P. 4(i) advisory committee's note. Subsection (1)(A), the portion of the rule whose text we have emphasized in the above quotation, is an attempt to resolve the problems that may arise in the receiving court when a foreign court attempts to assert jurisdiction over a person found within the national boundaries of the receiving court. *See* Ronan E. Degnan and Mary Kay Kane, *The Exercise of Jurisdiction Over and Enforcement of Judgments Against Alien Defendants,* 39 Hastings L.J. 799, 840 (1988) ("[T]h[e] approach [of this section] assures that the receiving

state can have no objections to the means of transmitting notice.").

■ We must therefore determine what particular provision of Spanish law governing service within that country applies to our case. Rule 4(i)(1)(A) does not tell us whether it is the Spanish law governing service of process issued by non-Spanish courts in cases initiated in a non-Spanish jurisdiction or the Spanish law on service of process issued by Spanish courts for service on persons found in Spain that applies. The first issue we must consider, therefore, is whether Grand must serve the Spanish defendants in accordance with general Spanish procedural law (*i.e.,* how one resident party might serve another), or, more specifically, follow the procedure Spain requires foreign plaintiffs to follow when they desire to serve process originating outside Spain on parties found in Spain.[8]

Rule 4(i) does, however, require service to comport with "the manner prescribed by the law of the foreign country." Fed. R.Civ.P. 4(i)(1)(A). We think the ambiguity in Rule 4(i)(1)(A) concerning what particular foreign rule of service is required should be resolved in conformity with a second purpose of subsection 4(i) to "provide[ ] an alternative that is likely to create least objection in the place of service and also is likely to enhance the possibilities of securing ultimate enforcement of the judgment abroad." *Id.* advisory committee's note. That purpose would be frustrated, and it would be an affront to national sovereignty, if a United States court applied Spain's procedures for service in cases brought in a Spanish court against parties found in Spain if Spain has enacted special provisions governing service of process issued out of the courts of other nations on behalf of foreign plaintiffs against persons found in the receiving jurisdiction. It seems to us that Rule 4(i) permits a foreign jurisdiction to refuse to subject its resi-

---

**8.** Pennsylvania Rule 404, as applied through Federal Rule of Civil Procedure 4(e), supplies alternate methods of service where the dictates of Rule 402 cannot be met. Though consonant with Rule 4(i) on this point, it too has the same ambiguity as Rule 4(i)(1)(A). Indeed it uses similar language. Thus, Pa. Rule 404 provides,

"[o]riginal process shall be served outside the Commonwealth ... in the manner provided by the law of the jurisdiction in which the service is made for service in an action of any of its courts of general jurisdiction." Pa.R.Civ.P. 404(3). *See also* 42 Pa.Cons.Stat.Ann. § 5323(a), (c) (Purdon 1981).

dents or nationals to service of process issued by a foreign court in the same manner as it does for domestic plaintiffs suing in a Spanish court. Spain, or indeed any other foreign jurisdiction, could rationally decide to impose special burdens on foreign process because service of process issued by a foreign court may require residents of the receiving state to defend themselves in distant and inconvenient places against laws that impose duties that nationals or residents of the receiving state have not foreseen or are unaccustomed to taking into account. Thus, Spain may impose more onerous formalities on service of process issued by a foreign court than it would for service of domestic process. It could do so out of a desire to impress on its residents the need to take action, and not to ignore the foreign process simply because the court issuing it is remote, a kind of cavalier attitude that is less likely in the face of domestic process. When the local sheriff knocks on a door of a resident in his own community with a summons to answer a neighbor's charges, the recipient usually reacts. When the summons calls on him to answer charges half a world away in a court he has never heard of, the party served may be less likely to bestir himself, not recognizing that a failure to do so may have serious adverse consequences. Accordingly, we think that Rule 4(i) required Grand to observe the provisions of Spanish law governing the service on Spanish nationals of process issued out of non-Spanish courts at the request of foreign plaintiffs. In a similar factual situation, the United States District Court for the Southern District of New York applied the provisions of Mexican law concerning service on residents by non-nationals. *See American Centennial Ins. Co. v. Seguros La Republica, S.A.*, 1991 WL 60378 (S.D.N.Y.1991).

We are persuaded that this is the correct approach. We therefore pass on to examine what a non-Spanish individual or corporation who has commenced an action in a non-Spanish forum must do in order to validly serve Spanish citizens or other persons and corporations found in Spain. Only thereafter can we turn to the facts of this case and decide whether Grand has succeeded in serving the Spanish defendants in accord with Spanish law.

■ The parties are sharply divided on the issue of what Spanish law is relevant and the effect that it has upon service. Federal Rule of Civil Procedure 44.1 governs the determination of foreign law. *See Mobile Marine Sales, Ltd. v. M/V Prodromos*, 776 F.2d 85, 89 (3d Cir.1985). It provides:

A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law.

Fed.R.Civ.P. 44.1. Therefore, we do not defer to the district court on the issue of what foreign law is applicable. *See Mobile Marine Sales, Ltd.*, 776 F.2d at 89; *see also Kalmich v. Bruno*, 553 F.2d 549, 552 (7th Cir.), *cert. denied*, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977). Moreover, both the text of the rule and the advisory committee notes make it clear that we are not limited to the material presented to the district court in analyzing issues of foreign law but may do our own supplemental research.[9] Finally, we note that the party asserting the validity of service bears the burden of proof on that issue. *See* 4A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1083 (1987).

At oral argument, all parties stated they relied on the differing analyses of Spanish law set forth in their respective affida-

---

**9.** The Notes of the Advisory Committee state: "In further recognition of the peculiar nature of the issue of foreign law, the new rule provides that in determining this law the court is not limited by material presented by the parties; it may engage in its own research and consider any relevant material thus found." Fed.R.Civ.P. 44.1 advisory committee's note.

vits.[10] Initially, Grand must show that the individual who effected service was a person with authority to act as a process server under the laws of Spain. Ms. Powers concludes, but without analysis or citation of authority, that "notification by a Notary, a public official, is absolute and uncontestable." Powers' Affidavit 4 at 569. The Spanish defendants argue in response that service is a judicial act which must, under Spanish law, be performed by a judicial authority. If the service of process that Spanish law requires in this case is a judicial act, a notary, a non-judicial officer, cannot perform that function. Under article 2 of the notaries' own regulations, "Notaries Public are fully responsible for the duties of public attesting with regard to relations in private law to be established or declared in cases *where litigation is not involved.*" J & A Garrigues' Affidavit at 653 (emphasis in affidavit). Grand points to no authority, statutory or judicial, that permits a notary to effect service of process issued by a foreign court on a Spanish resident. Although Grand's Spanish counsel states her belief that service by a notary is proper under Spanish law, she does so in a wholly conclusory way. Her bare conclusion is not sufficient to meet the obligation a serving party has to satisfy us that Grand, by using a notary, properly effected service on the Spanish defendants in accord with Spanish law.

Moreover, even if Grand were correct in its contention that a Spanish notary can serve process issued by a non-Spanish court on a person resident in Spain, Grand has not demonstrated that it observed the procedures Spanish law requires before the courts of Spain will recognize the authority of a foreign court over a Spanish resident or other person found in Spain who is sued in an action brought against the Spanish resident or other person in the foreign court. Grand assumes that Federal Rule of Civil Procedure 4(i) requires the serving party to do no more than comply with the laws of Spain governing service of process upon Spanish residents sued in Spanish courts. We think that assumption is incorrect. Spanish law expressly requires that a Spanish national must be served with process issued out of a foreign court in a different, more formal manner.

Article 300 of the Ley De Enjuiciamineto Civil (L.E.J.) states:

> Court notices/actions which must be performed abroad will be made in the form set forth in international treaties. In the event (treaties) do not exist, they [court orders] will be made through diplomatic channels through the Ministry of Foreign Affairs.
>
> In the event a notice/act is to a Spanish defendant residing abroad, it may be performed by the Head of the Spanish Consular Office or, if any, the Head of the Diplomatic Mission of the area as long as it is not contrary to the laws of the place of residence.
>
> If the defendant is foreign, copies of the suit and the documents will be written in Spanish.
>
> The same rules will be observed to perform in Spain petitions of foreign courts by which any court notice/act are required.[11]
>
> Any doubts will be resolved according to the principle of reciprocity.

Powers' Affidavit 3 at 439 (translation of L.E.J. Article 300) (footnote added). Absent a treaty, Article 300 directs that service by foreign parties be "made through diplomatic channels through the Ministry of Foreign Affairs." *Id.* The parties

---

**10.** Grand submitted four separate affidavits from Attorney Powers (herein Powers affidavit 1–4). The Spanish defendants rely upon two affidavits, one from the Madrid law firm of Coronel De Palma and one from the Spanish law firm of J & A Garrigues (herein Garrigues affidavit). Because our inquiry is not limited to the evidence properly presented in the proceedings in the district court, it is unnecessary to consider Grand's arguments as to what evidence was properly before the district court on this issue. *See Mobile Marine Sales, Ltd.,* 776 F.2d at 89.

**11.** Although the translation the parties provide seems less than felicitous, we believe that the summons issued by the district court and served with the complaint pursuant to Rule 4 is an order of a foreign court concerning notice which the foreign court petitions the Spanish authorities to effectuate.

agree that the Convention of the Hague on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matters, to which both the United States and Spain are now signatories, did not go into effect between our two nations until August 3, 1987, and as such is inapplicable to the instant case, and our attention is directed to no other potentially applicable treaty.

Therefore, we have concluded that L.E.J. Article 300 furnishes the applicable law and hold that the district court erred when it interpreted Article 300 as only one of at least two methods a foreign plaintiff might elect to effect service of foreign process on Spanish nationals or residents. The language of Article 300 does not appear to us to be so limited. It states that the same rules that govern service of process issued out of Spanish courts against Spanish foreign defendants also govern service of process against Spanish nationals sued in foreign courts. In either case, L.E.J. Article 300 requires the use of diplomatic channels. The process has been described as follows:

> If there are no treaties in effect between Spain and the country where the defendant is resident, service of process is effected by diplomatic channels. In this method, the Spanish court transmits letters requisitorial containing the certificate for service to the Spanish Ministry of Foreign Affairs, who transmits them to the Ministry of Foreign Affairs of the country of the defendant's residence, who transmits them, in turn, to the appropriate judicial body for service. Service is effected pursuant to the laws of the country where it is made.
>
> . . . . .
>
> Service from abroad of a foreign defendant whose residence is in Spain is effected in the same manner as service from Spain abroad. Thus, if there are no applicable treaties, service is made through diplomatic channels, in this case from the foreign court to the foreign Ministry of Foreign Affairs, to the Spanish Ministry of Foreign Affairs, to the

appropriate Spanish court. Service will be performed within Spain pursuant to Spanish procedural rules.

Bernardo M. Cremades and Eduardo G. Cabiedes, *Litigating in Spain* 151–52 (1989).

Grand did not enlist the aid of either United States or Spanish consular officials to serve the Spanish defendants. Instead, Grand claims L.E.J. Article 268 sets forth the applicable procedure for delivery of process and that it complied with that section. That argument is inconsistent with our conclusion that L.E.J. Article 300 applies to service in Spain of process issued by non-Spanish courts. We think Article 268 applies only to service by Spanish parties suing in Spanish forums parties who are amenable to service in Spain. Article 268 does, however, describe the general method by which process must be delivered in Spain. Thus, it appears that service made pursuant to Article 300 must also comply with the requirements of Article 268 concerning delivery. In other words, compliance with Article 268 is necessary, but it is not necessary and sufficient. Accordingly, we believe Federal Rule 4(i) requires Grand to comply with the Spanish rules applying to service of process issued out of foreign courts rather than service of process issued out of the courts of Spain.[12]

Though Grand impliedly concedes that it has not met the literal requirements of Article 300 for service of process on behalf of foreign plaintiffs proceeding in a non-Spanish forum against Spanish residents, it argues that its service on the Spanish defendants was nevertheless effective under Spanish law because Spanish courts do not require strict compliance with Article 300. In support, Grand cites a single Spanish case, *Howard v. Kassnar Imports*, (April 15/1986–B.O.E. 102), but fails to provide us with either a translation or extended discussion of that case. From the limited description we have, it appears that in *Howard* a Spanish court upheld a default judgment entered in a United States court

---

**12.** This conclusion makes it unnecessary for us to evaluate Grand's claim that its service complied with Article 268.

against a Spanish defendant when service was made by registered mail. Such service is permitted by Rule 4(i)(1)(D), a method Grand had unsuccessfully attempted earlier. In *Howard*, however, the defendant unquestionably received the process. It is therefore distinguishable and we are unwilling to conclude that Spanish courts will ignore the requirements of L.E.J. Article 300 without more compelling authority. Service by registered mail, in general, is more likely to provide notice than the deposit of process with a building receptionist.[13]

For these reasons we are unable to hold that Grand has met its obligation, as the serving party, of establishing that it properly served the process issued by the district court on the Spanish defendants in accord with the requirements of Spanish law.

Grand, however, makes one final argument that must still be considered. It contends that any technical defect in serving the Spanish defendants under Spanish law is cured by L.E.J. Article 279. The parties dispute the actual translation of this section.[14] They agree, however, that its first sentence states that service is "void" under Spanish law when Spain's rules of service are not met. Their differing translations of the second paragraph, however, lead to a debate about its meaning. Grand argues from its translation that actual notice cures improper service. The Spanish defendants, arguing from their translation, contend that a formal waiver of improper service is necessary. Both translations seem to us to be consistent with a requirement that a waiver of defective service must be formally and affirmatively made in court. This interpretation of Article 279 is supported by Grand's supplemental material which refers not only to an "appellant appear[ing] in court, [and] opposing the claim or proposing evidence," but also to "the defendant [who has] appeared and executed acts conducive to defending his rights," and to an "appear[ance of the defendant], [in] answer[ing] the claim" as acts of waiver that the Spanish Supreme Court has held are sufficient to trigger the second paragraph of Article 279.[15] Supp. Letter of Appellees dated Oct. 15, 1992.

We reject Grand's argument on waiver under Article 279. Its suggested construction of Article 279, making notice alone curative of defective service, would make Article 279's first sentence meaningless. We do not think Spain would have enacted complex technical rules concerning service of process issued out of foreign courts on penalty of dismissal for noncompliance and then ignore those technical requirements on proof of actual notice. Accordingly, we believe Spanish law requires formal waiver.

---

**13.** We expressly note that our discussion in Part V.A. of this opinion analogizing the Pennsylvania law concerning service on a "person for the time being in charge," particularly that portion concerning the purpose of insuring notice common to all requirements of service, is, according to the Advisory Committee on the Federal Rules of Civil Procedure, also applicable to Rule 4(i). *See* Rule 4(i)(1), Advisory Committee Note.

**14.** The Spanish defendants assert the section states:

Notifications, citations and service of process (summonses) that are not carried out pursuant to the provisions of this section shall be void.

However, should the person notified, cited or summoned consider himself to be informed in the proceedings, then the service will take effect as from that time, as if it had been carried out pursuant to the requirements of law.

This will not relieve the clerk from the disciplinary action established in the following article.

Supp. Letter of Appellants dated Oct. 15, 1992 at 2. Grand contends that the following translation is more accurate:

The notifications, citations and summons that are not performed in the manner set out in this section are void.

Notwithstanding, in the event the person notified, cited, or summoned makes it understood in the proceedings that he is aware, the service will have full effect from that moment, as if it had been performed in accordance with the provisions of the law.

This will not exempt the clerk from the disciplinary action established in the article that follows.

Supp. Letter Affidavit of Powers dated Oct. 15, 1992.

**15.** *See also Litigating in Spain* at 152 (1989) (interpreting Article 279 as requiring the party to "appear[ ] and consider[ ] himself served")

There is nothing strange about our conclusion that notice, though necessary, is not sufficient to effect service. Similar principles exist in Anglo–American law. Although notice underpins Federal Rule of Civil Procedure 4 concerning service, notice cannot by itself validate an otherwise defective service. Proper service is still a prerequisite to personal jurisdiction. Inquiry into the propriety of service is separate from, and in addition to, the due process concerns present in an inquiry into the notice itself. *See Mid–Continent Wood Prods., Inc. v. Harris,* 936 F.2d 297, 301 (7th Cir.1991); *Echevarria–Gonzalez v. Gonzalez–Chapel,* 849 F.2d 24, 28 (1st Cir. 1988); *Montgomery, Zukerman, Davis, Inc. v. Diepenbrock,* 698 F.Supp. 1453, 1458 (S.D.Ind.1988). A district court's power to assert *in personam* authority over parties defendant is dependent not only on compliance with due process but also on compliance with the technicalities of Rule 4. *Echevarria–Gonzalez,* 849 F.2d at 28. Notice to a·defendant that he has been sued does not cure defective service, and an appearance for the limited purpose of objecting to service does not waive the technicalities of the rule governing service. *See Way v. Mueller Brass Co.,* 840 F.2d 303, 306 (5th Cir.1988) (a party that notes a service defect in a responsive motion without moving to dismiss does not waive service defect); *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.,* 677 F.Supp. 289 (M.D.Pa.1987) (entrance of general appearance in federal court, filing an unopposed motion for extension of time to respond to complaint and entering into and complying with stipulations which stated it did not impair right to raise any defense, do not waive objection to service). This is not a case in which the Spanish defendants have waived defects in service explicitly or implicitly by their actions. *See, e.g. Santos v. State Farm Fire & Casualty Co.,* 902 F.2d 1092, 1095–96 (2d Cir.1990) (waiver where defense not raised until two years after complaint answered); *Pardazi v. Cullman Medical Center,* 896 F.2d 1313, 1316 (11th Cir.1990) (waiver where defendant failed to raise objection to plaintiff's failure to serve process within 120 days in pretrial motion to dismiss).

The Spanish defendants have consistently and strenuously objected to the district court's personal jurisdiction over them and challenged service in all their formal appearances before the district court. Nothing in the record reveals any affirmative acceptance of service. Grand's reliance upon the following facts is misplaced: no affirmative denial of receipt of service, telexes sent to the Spanish defendants concerning service, the Spanish defendants' retention of legal representation in 1987, and appearance of counsel at a 1988 deposition for a California defendant where the attorney actively participated. None of these facts, alone or taken together, show an affirmative waiver of defective process. At best, they show inaction. Grand has not shown that the Spanish defendants affirmatively chose to submit themselves to the jurisdiction of the district court in accord with the waiver provisions of Article 279. Indeed, the Spanish defendants' actions are to the contrary. Not only have they contested the district court's personal jurisdiction over them throughout this case, but they have even refused to defend on the merits when they knew that course would lead to entry of a default judgment for damages in a large amount. When the Spanish defendants became active in this litigation, it was for the purpose of having the default judgment entered against them opened because it was entered by a court that lacked *in personam* jurisdiction over them. Under Spanish law, as under our law, a motion that seeks to vacate an order for lack of proper service does not waive the defect in service. Likewise, nothing the Spanish defendants did before they filed their motion to vacate the default judgment waived their defense of improper service.[16] The Spanish defendants have not been served in compliance with Spanish law, and they have not waived compliance with the technicalities of Spanish law on service of pro-

---

16. Grand's attempted service by mail under Rule 4(i)(1)(D) was plainly ineffective.

cess issued by non-Spanish courts against parties amenable to service in Spain.

The Spanish defendants have not been properly served under either Spanish or Pennsylvania law. Therefore, the district court's entry of a default judgment for Grand and against the Spanish defendants cannot stand.

## VI.

Because Grand failed to serve the Spanish defendants in compliance with either federal, Pennsylvania or Spanish law, the district court lacked jurisdiction to enter any judgment against them. Therefore, we will reverse the district court's order denying reconsideration of the default judgment it entered against the Spanish defendants and remand this case to it with instructions to vacate the default judgment.[17]

**17.** Having concluded service was improper, we do not reach the question of whether the bond the district court set as a condition for the opening of a default judgment might violate due process.