**In re HUNT'S PIER ASSOCIATES, Debtor.**

**HUNT'S PIER ASSOCIATES through the Trustee, Hersh KOZLOV, Plaintiff,**

v.

**James CONKLIN, Glenn Maxwell, Raoul Hoffman, Hunt's Pier Group, and Buttercup, Inc., Defendants.**

Bankruptcy No. 91–15644S.
Adv. No. 92–1059S.

United States Bankruptcy Court,
E.D. Pennsylvania.

July 14, 1993.

[redacted block]

Hersh Kozlov, Kozlov, Seaton, Romanini & Brooks, Cherry Hill, NJ, trustee pro se.

Paul Winterhalter, David S. Fishbone, Ciardi, Fishbone & DiDonato, Philadelphia, PA, for debtor.

Norman H. Petty, Jr., Reed Smith Shaw & McClay, Philadelphia, PA, for defendant James Conklin.

Richard C. Reinhart, Reinhart & Moreland, Bradenton, FL, for defendant Raoul Hoffman.

Thomas J. Elliott, Elliott, Bray & Riley, Blue Bell, PA, for RTC.

Michael H. Kaliner, Jackson, Cook, Caracappa & Bloom, Fairless Hills, PA, for Theodore Snyder.

Hunt's Pier Group, Inc., Cedarhurst, NY, former defendant pro se.

Buttercup, Inc., Hamilton, Ontario, Canada, former defendant pro se.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, PA.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A.  INTRODUCTION

The issue presented for determination in the instant proceeding is whether an individual who resides in Ontario, Canada has been properly served when a process server left papers for him with "a [sic] adult female secretary at his place of business." Since we find that such service is insufficient under both the law of this jurisdiction (Pennsylvania) and that of Ontario, we conclude that service on the Canadian Defendant was improper under the controlling international Hague Convention principles, as well as any other arguably applicable rules of service.  Consequently, having forewarned the Plaintiff Trustee that this result would transpire if the latest in a series of attempts to properly serve the Canadian Defendant failed, we will dismiss this Complaint as to that party.

### B.  HISTORY OF THE PROCEEDING

The voluntary Chapter 11 bankruptcy case underlying the instant proceeding was filed on October 23, 1991, by HUNT'S PIER ASSOCIATES ("the Debtor"), a realty partnership the most prominent holding of which is "Hunt's Pier," an amusement pier located in Wildwood, New Jersey ("the Pier").  In the two prior published Opinions arising out of this case, *In re Hunt's Pier Associates*, 154 B.R. 436, 437–38 (Bankr. E.D.Pa.1993) (*"Hunt II"*); and *In re Hunt's Pier Associates*, 143 B.R. 36, 38–41 (Bankr.E.D.Pa.1992) (*"Hunt I"*), we described the longstanding series of disputes among the original four partners of the Debtor, which ultimately led to the appointment of HERSH KOZLOV, through whom the Debtor brings suit in the instant proceeding, as a Chapter 11 Trustee ("the Trustee").

We note that the Debtor's Third Amended Plan ("the Plan") was confirmed on February 10, 1993.  An appeal of the confirmation Order by Theodore Snyder, one of the original partners of the Debtor and the operator of the Pier in the 1992 season and, apparently, at least part of the 1993 season as well, was dismissed and a motion for reconsideration of this dismissal was denied by the district court in C.A. No. 93–1462 on July 2, 1993.

Also, we observe that the Debtor's primary secured lender, the Resolution Trust Corporation, as receiver of Atlantic Financial Savings, F.A. ("the RTC"), filed, on June 11, 1993, a motion to declare the Debtor in default of the Plan's payment terms and to convert this case to a Chapter 7 case.  This Motion has been tentatively resolved and is scheduled for a second continued hearing on July 21, 1993.

*Hunt I* and *Hunt II* address several illfated developments arising in the operation of the Pier in the 1989 and 1990 seasons by another of the Debtor's partners, David Kami.  The Complaint in this proceeding, filed on October 20, 1992, alleges that, for the 1991 season, Kami leased the Pier to Defendant HUNT'S PIER GROUP, INC. ("HPG"), which in turn purported to sell the Pier to BUTTERCUP, INC. ("Butter-

cup"), an entity allegedly owned by Defendants JAMES CONKLIN ("the Defendant") and GLENN MAXWELL and which employed Defendant RAOUL HOFFMAN on its behalf. The Complaint alleges that the Defendants collected all gross revenues from the Pier without accounting to the Debtor for same; failed to appropriately insure the Pier, as required; damaged and removed rides and equipment from the Pier; and damaged the Pier itself without repairing it. An accounting, a report of all property removed, and compensatory, special, and punitive damages were demanded.

The trial of the proceeding was originally scheduled on December 9, 1992. On that date, the Trustee reported that he had been unable to effectuate service upon the Defendants and the matter was continued to January 27, 1993, and eventually to February 10, 1993, to permit him to make service. On February 8, 1993, the Defendant filed a Motion to Dismiss Plaintiff's Adversary Proceeding Against Him ("the Motion to Dismiss"). The Motion to Dismiss argued that dismissal of the Complaint was necessary because (1) the Defendant, a Canadian citizen and resident, had no contact with Pennsylvania and therefore this court lacked personal jurisdiction over him; and (2) the Trustee's attempt, at that point, to serve process upon him by regular mail outside the United States was (a) legally insufficient; and (b) defective, because only a Summons and an unsigned, incomplete Complaint was mailed to him.

During a colloquy with counsel for the Debtor, the Trustee, and the Defendant on February 10, 1993, we strongly suggested that the Trustee re-serve the entire Complaint by personal service upon the Defendant, which we felt surely would constitute proper service. We then continued the trial until March 17, 1993, to permit him to do so. However, at relisted trial dates of March 17, 1993, and March 31, 1993, we were informed by the Trustee of his continued lack of success in making service. The Defendant's counsel, meanwhile, continued to vigorously press the Motion to Dismiss.

Ultimately we granted the Trustee's request for a fourth further continuance of the trial for a lengthy period, *i.e.*, until May 26, 1993, with a directive that, if appropriate service was not effected upon the Defendant by that date, we would be inclined to grant the Motion to Dismiss.

Nevertheless, on May 26, 1993, we were advised that the Debtor, appearing for the Trustee, could report no progress in service of the Defendants. Noting the continued presence of the Motion to Dismiss, we entered an Order of May 27, 1993, directing the Trustee to file with the court, by June 15, 1993, a copy of Certification of Service of the Complaint upon any Defendant whom it wished to pursue in the pending proceeding. The Order further provided that all parties as to whom a Certification of Service was not filed would be dismissed as defendants at a final status hearing scheduled for June 16, 1993. In response to the Debtor's contention that the Defendant was evading service, we allowed the Trustee until June 9, 1993, to file an expedited motion seeking special relief in the form of permission to utilize substituted service or seeking relief from that Order. We made it clear that failure of the Trustee to obtain special relief or to properly serve the Defendant would result in our granting the Motion to Dismiss.

As of June 16, 1993, no motion for special relief had been filed. The Debtor and the Trustee submitted to the court an Affidavit of Service which stated that service had been effectuated upon the Defendant on June 3, 1993, "by leaving a copy of the Summons and Notice of Trial with a [sic] adult female secretary at his place of business, at R.R. # 6, Brantford, Ontario." The Defendant promptly objected to the method of purported service as being inadequate and not in compliance with applicable rules. Thereupon, the court entered an Order of June 17, 1993, which dismissed Maxwell, HPG, and Buttercup, whom the Trustee and Debtor indicated were no longer being pursued, in light of the Trustee's failure to file Certifications of Service as to these parties; and accorded the remaining parties, including Hoffman, upon whom service was allegedly uncontestably made, an opportunity to simultaneously file Briefs in support of their respective posi-

tions as to this court's personal jurisdiction over the Defendant on or before June 30, 1993 (Opening Briefs), and on or before July 7, 1993 (Reply Briefs).

On June 30, 1993, Opening Briefs were filed by the Debtor and the Defendant. The Debtor also filed an Amended Affidavit of Service, which changed only the recitation that he had served "the Summons and Notice of Trial" to a statement that he had served "the Complaint, Reissued Summons and Notice of Trial" on June 3, 1993. The Debtor, in its Opening Brief, argued that the Complaint had been properly served upon the Defendant pursuant to Federal Rule of Civil Procedure ("F.R.Civ.P.") 4(c)(2)(C)(i), which allegedly incorporated Pennsylvania Rule of Civil Procedure ("Pa.R.Civ.P.") 402(a)(2)(iii). The Defendant countered that service, as allegedly required by F.R.Civ.P. 4(d)(1), had not been made and that, under any applicable rules, the failure to serve the Summons and the Complaint together, per the original Affidavit of Service, was fatal to a claim of proper service.

Upon review of the parties' Opening Briefs and the applicable law, this court, on July 2, 1993, entered an Order advising that the Service Requirements of the Hague Convention on Service Abroad, 20 U.S.T. 362, T.I.A.S. 6638, 658 U.N.T.S. 163 (reprinted in 28 U.S.C.A., F.R.Civ.P. 4, TREATIES AND CONVENTIONS) ("the Hague Convention"), which the parties had not addressed, appeared to be relevant, citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698, 108 S.Ct. 2104, 2107, 100 L.Ed.2d 722 (1988); *Gallagher v. Mazda Motor of America, Inc.*, 781 F.Supp. 1079, 1081 (E.D.Pa.1992); and *Brown v. Bellaplast Maschinenbau*, 104 F.R.D. 585, 586 (E.D.Pa.1985). Accordingly, we directed the parties to address the issue of the applicability of the Hague Convention requirements in their forthcoming Reply Briefs.

In their Reply Briefs, both parties appeared to agree that service of process upon the Defendant was indeed subject to the Hague Convention requirements. The Debtor, however, argued that, since the method of service it employed to serve the Defendant allegedly complied with F.R.Civ.P. 4(c)(2)(C)(i) and Pa.R.Civ.P. 402(a)(2)(iii), it met the Hague Convention requirements. The Defendant, meanwhile, argued that the Trustee's method of service complied with neither the Hague Convention requirements nor what it apparently believed were separate state law service rules. It also argued that acceptance of the amended Affidavit of Service was materially prejudicial to it and hence inadmissable pursuant to F.R.Civ.P. 4(h). Finally, it attached an Affidavit of Joseph M. Pigott, Esquire, who stated that his partner opened an envelope delivered to the "female secretary" referenced in the Affidavit of Service, identified as Grace Maddock, and found therein only a one-page document, a copy of the Summons.

## C. DISCUSSION

### 1. THIS COURT APPEARS TO LACK PERSONAL JURISDICTION OVER THE DEFENDANT IN THIS PROCEEDING.

The starting point for legal discussion is Federal Rule of Bankruptcy Procedure (F.R.B.P.") 7004(e), which provides as follows:

(e) Service on Debtor and Others in Foreign Country. The summons and complaint and all other process except a subpoena may be served as provided in rule 4(d)(1) and (d)(3) F.R.Civ.P. in a foreign country (A) on the debtor, any person required to perform the duties of a debtor, any general partner of a partnership debtor, or any attorney who is a party to a transaction subject to examination under Rule 2017; or (B) on any party to an adversary proceeding to determine or protect rights in property in the custody of the court; or (C) on any person whenever such service is authorized by a federal or state law referred to in Rule 4(c)(2)(C)(i) or (e) F.R.Civ.P.

We initially note the inapplicability F.R.B.P. 7004(d), which is limited to *nationwide* service of process. F.R.B.P. 7004(d) has no analogue in the F.R.Civ.P., and is justified by the "unique proclivity of bankruptcy cases to involve a large number

of parties residing in a wide variety of American jurisdictions." *In re Franklin Ridgewood Associates,* 1990 WL 153572, slip op. at *4 (Bankr.E.D.Pa. Oct. 11, 1990). Therefore, in bankruptcy matters involving jurisdiction over foreign defendants, as opposed to those involving residents of the United States, the issue of the power of a federal court sitting in a particular state to exert personal jurisdiction over a defendant who is not a resident of that state becomes relevant. The law of a forum's personal jurisdiction over a non-resident of the state of that forum must therefore be considered. *See Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 108–13, 107 S.Ct. 1026, 1030–33, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–78, 105 S.Ct. 2174, 2181–85, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291–94, 100 S.Ct. 559, 564–66, 62 L.Ed.2d 490 (1980); *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 481–84 (3rd Cir.1993); and *Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros.,* 983 F.2d 551, 554–58 (3rd Cir.1993).

We note that the Defendant did not discuss, in his Briefs, the issue of this court's absence of jurisdiction over the Defendant due to his lack of sufficient contacts with the Commonwealth of Pennsylvania, choosing instead to devote his attention solely to the issue of the propriety of service upon the Defendants. This is probably because the discussions at the colloquies of May 26, 1993, and June 16, 1993, focused exclusively on the service issue. However, the issue of this court's personal jurisdiction over the Defendant was raised prominently in the Motion to Dismiss and therefore has not been waived by the Defendant. *See* F.R.B.P. 7012(b), incorporating F.R.Civ.P. 12(h)(1).

Although we are not inclined to devote great attention to this issue due to the parties' failure to brief it, we note that this issue would become highly significant if the Trustee or the Debtor chose to refile this suit after our within dismissal of this proceeding due to improper service and thereafter did properly serve the Complaint upon the Defendant.

This issue is also worthwhile to address because our independent preliminary conclusion is that this court in fact lacks personal jurisdiction over the Defendant. In *Asahi, supra,* 480 U.S. at 108–09, 107 S.Ct. at 1030, the court articulates the appropriate tests for personal jurisdiction thusly:

The Due Process Clause of the Fourteenth Amendment limits the power of a state court to exert personal jurisdiction over a nonresident defendant. "[T]he constitutional touchstone" of the determination whether an exercise of personal jurisdiction comports with due process "remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 85 L.Ed.2d 528, 105 S.Ct. 2174 [2183] (1985), quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 90 L.Ed. 95, 66 S.Ct. 154, [158] 161 A.L.R. 1057 (1945). Most recently we have reaffirmed the oft-quoted reasoning of *Hanson v. Denckla,* 357 U.S. 235, 253, 2 L.Ed.2d 1283, 78 S.Ct. 1228 [1239] (1958), that minimum contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus involving the benefits and protections of its laws." *Burger King,* 471 U.S. [462] at 475, 85 L.Ed.2d 528, 105 S.Ct. 2174 [at 2183]. "Jurisdiction is proper ... where the contacts proximately result from actions by the Defendant *himself* that create a 'substantial connection' with the forum State." Ibid., quoting *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 2 L.Ed.2d 223, 78 S.Ct. 199 [201] (1957) (emphasis in original).

■ We fail to see any actions of the Defendant which established any sort of contacts with the Commonwealth of Pennsylvania, as opposed to his apparent significant contacts with the State of New Jersey. Although "mere foreseeability" of some contact of one's product with a particular state is not sufficient to constitute minimum contacts, and establish grounds for exercise of personal jurisdiction with re-

spect to that party, *see Asahi, supra,* 480 U.S. at 111–12, 107 S.Ct. at 1031–32; and *World–Wide Volkswagen, supra,* 444 U.S. at 296–98, 100 S.Ct. at 566–68, we fail to see where the Defendant's contact with Pennsylvania was in any way foreseeable. Invocation of this court's jurisdiction only came about because, for the convenience of its two dominant partners, Leon Silverman, Esquire, and Elias Stein, Esquire, the Debtor chose to file its bankruptcy case in their home state of Pennsylvania despite the fact that all of its realty assets, including the Pier, are located in New Jersey. As to parties domiciled out of the United States and therefore outside the scope of F.R.B.P. 7004(d), like the Defendant, these facts create a significant jurisdictional problem which we doubt that the Trustee or the Debtor can overcome.

Having determined that there is an independent basis, not discussed by the parties in their Briefs, which supports the Defendant's position that this court lacks personal jurisdiction over him, we now turn to the issue of the validity of the service on the Defendant, the issue which the parties do address.

## 2. THE HAGUE CONVENTION SERVICE RULES MUST BE APPLIED IN DETERMINING WHETHER SERVICE ON THE DEFENDANT WAS PROPER.

As this court suggested in its Order of July 2, 1993, and the parties now agree, the Hague Convention provisions are highly relevant to the analysis of the propriety of service on the Defendant. Describing the Hague Convention requirements in *Schlunk, supra,* the Supreme Court held, 486 U.S. at 698, 108 S.Ct. at 2107:

> The Hague Service Convention is a multilateral treaty that was formulated in 1964 by the Tenth Session of the Hague Conference of Private International Law.... The revision was intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad (citations omitted).

*See also* F. Mann, *Foreign Service of Process by Direct Mail Under the Hague Convention and the Article 10(a) Controversy: Send v. Service,* 21 CUMBERLAND L.REV. 647 (1991).

In order to achieve its purpose to provide procedures for service abroad, the Hague Convention offers two methods in which service may be effectuated: formal and informal. The formal methods, set forth at Articles 2 through 9 of the treaty, provide that service may be made through a central authority established by each country or through a country's diplomatic or consular agents. The informal method is set forth at Article 10 as follows:

> Provided the State of destination does not object, the present Convention shall not interfere with—
>
> (a) the freedom to send judicial documents, by postal channels, directly to persons abroad,
>
> (b) the freedom of judicial officers, official or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
>
> (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

In order to determine whether the provisions of the Hague Convention are applicable to service on a foreign defendant, a party seeking international service and the party sought to be served must both reside in countries which are signatories to the Hague Convention. If both the plaintiff and defendant reside in such countries, and "[i]f the internal law of the forum state defines the applicable method of serving processes as requiring the transmittal of document abroad, then the Hague Convention applies." *Schlunk, supra,* 486 U.S. at 700, 108 S.Ct. at 2108. Moreover, if the Hague Convention rules did apply, the Court held that compliance with the terms

of the Convention was mandatory. *Id.* at 705, 108 S.Ct. at 2111.

Application of the above tests to the matter before this court clearly indicates that the Trustee was required to effectuate service in accordance with the principles of the Hague Convention. Firstly, both the Trustee, located in the United States, and the Defendant, a Canadian resident, are citizens of countries which are signatories to the Hague Convention. *See* 28 U.S.C.A., F.R.Civ.P. 4, TREATIES AND CONVENTIONS (listing states which are parties); and *Chowaniec v. Heyl Truck Lines,* 1991 WL 111156, slip op. at *1 (N.D.Ill. June 17, 1991). Secondly, the internal law of the forum state (Pennsylvania) defines a method of service of process in Pa.R.Civ.P. 402(a)(2)(iii), which appears applicable to defendants who are abroad as well as those located in the state. *See Grand Entertainment Group, supra,* 988 F.2d at 484–86 (Pa.R.Civ.P. 402(a)(2)(iii) applied in determining the propriety of service upon Spanish defendants).

### 3. THE TRUSTEE FAILS TO SATISFY THE REQUIREMENT OF THE HAGUE CONVENTION THAT SERVICE ADHERE TO THE RULES OF THE DESTINATION COUNTRY.

■ Since it is clear that the Trustee was required to make service pursuant to Hague Convention principles, the service made by the Trustee upon the Defendant must comply with either the formal or informal methods of service referenced in the Convention principles. There is no allegation that the Trustee utilized the formal method of service. Instead, the Debtor, on behalf of the Trustee, contends that it made service upon the Defendant pursuant to Article 10 of the Hague Convention. Specifically, the Debtor posits that the service was proper under Article 10(b), which provides that, if the destination country "does not object," a competent person in the destination country may make service.

To determine whether the destination country "objects" to a particular form of service, the courts have looked to the service laws of that country to determine whether the method of service utilized would be valid in that country. *See Gallagher, supra,* 781 F.Supp. at 1081–82; and *Chowaniec, supra,* slip op. at *3. Those cases hold that, only if service is valid under the service rules of the destination country can it be found that the destination country does not "object" to the form of service utilized. Practically, it is appropriate to observe that, if the plaintiff's method of service does not comply with the requirements of the destination country, it is unlikely that the destination country would enforce any judgment obtained which is dependent upon form of service. *See Schlunk, supra,* 486 U.S. at 706, 108 S.Ct. at 2111–12; and *Chowaniec, supra,* slip op. at *2.

Accordingly, this court must look to the rules of service of Ontario, Canada, to determine whether the service made upon the Defendant was proper. The applicable Ontario rule of service is Rule 16. *See* G. WATSON & M. McGOWAN, ONTARIO CIVIL PRACTICE 265–74 (1991). Rule 16.01 requires that originating process shall be served personally under Rule 16.02 or by an alternative to personal service provided in Rule 16.03. Rule 16.02(1) provides, as to service on an individual, that it shall be made only "by leaving a copy of the document with the individual; ...". The pertinent "alternatives" to personal service, which appear in Rules 16.03(4), (5), are as follows:

*Service by Mail to Last Known Address*

(4) Service of a document may be made by sending a copy of the document together with an acknowledgment of receipt card (Form 16A) by mail to the last known address of the person to be served, but service by mail under this subrule is effective,

(a) only if the acknowledgment of receipt care or a post office receipt bearing a signature that purports to be the signature of the person to be served is received by the sender; and

(b) on the date on which the sender first receives either receipt, signed as provided by clause (a).

*Service at Place of Residence*

(5) Where an attempt is made to effect personal service at a person's place of residence and for any reason personal service cannot be effected, the document may be served by,

(a) leaving a copy, in a sealed envelope addressed to the person, at the place of residence with anyone who appears to be an adult member of the same household; and

(b) on the same day or the following day mailing another copy of the document to the person at the place of residence,

and service in this manner is effective on the fifth day after the document is mailed.

.     .     .     .     .

Service in the instant matter was effected by leaving a copy of certain documents with a secretary at the Defendant's place of business. A review of the foregoing Ontario Rules reveals that the method employed by the Debtor does not meet any of the alternative methods described in Rule 16.

Service was clearly not made on the Defendant personally, as per Rule 16.02(1). No mail notice requiring a receipt card was attempted, per Rule 16.03(4), nor was an envelope left at the Defendant's place of residence, per Rule 16.03(5). An envelope was apparently left for the Defendant at his place of business. However, none of the provisions of Rule 16 permit service of an individual at a place of business by any means.

Therefore, we conclude that Ontario, Canada, does indeed "object" to the method of service utilized by a Trustee here because it is not authorized under the rules of that jurisdiction. *Compare Chowaniec, supra,* slip op. at *3 (dispatch of mail which is not received by the defendant does not constitute proper service under applicable Canadian law). As a result, we conclude that the requirements of Article 10 of the Hague Convention have not been satisfied by the Trustee in the instant case. This conclusion is fatal to the attempts of the Trustee and the Debtor to invoke the jurisdiction of this court over the Defendant's person.

4. THE TRUSTEE ALSO FAILS TO SATISFY THE REQUIREMENTS OF THE SERVICE RULES OF THE FORUM STATE, AND THEREFORE SERVICE IS IMPROPER UNDER THE F.R.CIV.P. AS WELL AS PURSUANT TO THE HAGUE CONVENTION REQUIREMENTS.

█ In addition to satisfying the minimum requirements for service in the destination country, *Schlunk, supra,* suggests that the Hague Convention also requires that the method of service must comply with "the internal law of the forum state." 486 U.S. at 700, 108 S.Ct. at 2108. Requiring that service comply with that of the forum state is certainly logical. Effecting service in compliance with a forum state's laws is generally required to have that state exercise personal jurisdiction over a defendant. It is illogical to presume that a forum state will relax its service rules simply because the defendant is a foreigner. Therefore, Hague Convention principles also suggest that, in this case, the Trustee is required to adhere to the service rules of Pennsylvania, as well as those of Ontario, in order to effect proper service on the Defendant.

Furthermore, assuming *arguendo* that the Hague Contention principles did not apply here, F.R.B.P. 7004(e) requires that the Trustee effect service on a foreign individual pursuant to either F.R.Civ.P. 4(d)(1) or F.R.Civ.P. 4(c)(2)(C)(i). *Compare Umbenhauer v. Woog,* 969 F.2d 25 (3rd Cir. 1992) (plaintiff need only comply with F.R.Civ.P. in making service on a Swiss citizen despite objections of the Swiss government to the form of service because Switzerland is not a signatory to the Hague Convention. *See* 28 U.S.C.A., F.R.Civ.P. 4, TREATIES AND CONVENTIONS).

The requirements of F.R.Civ.P. 4(d)(1) are rather clearly not met, as it requires that service be made by

delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process....

The Debtor argues that the decision in *Frank Keevan & Son v. Callier Steel Pipe & Tube, Inc.*, 107 F.R.D. 665, 667 (S.D.Fla. 1985), supports the conclusion that service upon a receptionist in a defendant's place of business comports with F.R.Civ.P. 4(d)(1). In *Frank Keevan*, one means of service attempted was indeed delivery of pertinent papers to a receptionist at the corporate headquarters of a company of which the individual defendant was chairman of the board and principal shareholder. However, in that case, the party defendant was found to be evading service, and service on the receptionist was accompanied by several other means of service, including a form of substituted service "approved by this Court and the court of common pleas in Philadelphia, Pennsylvania." *Id.* at 671. It will be recalled that, in our Order of May 27, 1993, we directed the Trustee to seek special relief, such as an order allowing it to make substituted service, if he claimed that the Defendant was attempting to evade service. However, the Trustee and the Debtor eschewed this opportunity.

■ The Debtor relies principally upon F.R.Civ.P. 4(c)(2)(C)(i), which provides as follows, as support for the propriety of the service effected:

(C) A summons and complaint may be served upon a defendant on any class referred to in paragraph (1) or (3) of subdivision (d) of this rule—

(i) pursuant to the law of the State in which the district court held for the service of summons or other like process upon such defendant in an action brought in the courts of general jurisdiction of that State, ...

The law of the forum state which the Debtor argues is applicable is Pa.R.Civ.P. 402(a)(2)(iii), which provides as follows:

(a) Original process may be served

.     .     .     .     .

(2) by handing a copy

.     .     .     .     .

(iii) at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof.

.     .     .     .     .

It is true that Pa.R.Civ.P. 402(a)(2)(iii) permits service upon an individual at his office or usual place of business, in contrast to the law of Ontario, Canada. However, the rule also requires that service be made upon the person "for the time being in charge" of the defendant's office or usual place of business.

The Debtor cites to *Frank Keevan* and *Slater v. Goldberg*, 266 Pa.Super. 52, 54–55, 402 A.2d 1073, 1074 (1979), for the principle that the instant service upon the receptionist at the Defendant's place of business satisfies the requirements of Pa. R.Civ.P. 402(a)(2)(iii). However, as we noted at page 472 *supra*, *Frank Keevan* is readily distinguishable, since the service on the receptionist was just one of several alternative service methods utilized there. In *Slater*, service of owners of a business was effected upon the manager of the business, whom the service return specifically identified as the party in charge of the defendants' business.

Other authorities indicate that service upon a receptionist at the defendant's place of business, where the return of service is not embellished by a statement that the receptionist is in charge of the defendant's office, does not satisfy Pa.R.Civ.P. 402(a)(2)(iii). In *Grand Entertainment Group, supra*, service upon a receptionist at a common entrance to a building where the defendant had its office was deemed insufficient. 988 F.2d at 480, 484–86. In *Trzcinski v. Prudential Property & Cas. Ins. Co.*, 409 Pa.Super. 114, 117–20, 597 A.2d 687, 689–90 (1991), service upon the receptionist of an office of a law firm

which allegedly effectively functioned as the defendant's wholly-owned subsidiary was deemed insufficient. In so holding, the *Trzcinski* court found "no authority for the proposition that a receptionist of a domestic law firm can be deemed *ex officio* a proper recipient of legal process for a foreign corporation." 409 Pa.Super. at 118, 597 A.2d at 689. *Compare Hopkinson v. Hopkinson,* 323 Pa.Super. 404, 413–15, 470 A.2d 981, 986–87 (1984) (service on receptionist who represented that she was in fact in charge of the defendant's office was deemed proper).

The Affidavit reflecting service on the Defendant, even as amended, identifies the party served as merely a "female secretary at his place of business." It does *not* recite that the party served was "in charge" of this office. As the results in *Grand Entertainment Group* and *Trzcinski* indicate, the omission of this designation is critical, since a receptionist is not generally recognized as a party authorized to receive service. Therefore, we conclude that the Trustee and the Debtor have failed to establish that proper service was made upon the Defendant under Pa.R.Civ.P. 402(a)(2)(iii).

The Affidavit(s) of Service also appear to be defective in other ways. The original Affidavit merely recited that the "Summons and Notice of Trial" were served upon the Defendant. It is, of course, necessary under any form of service that the Summons *and Complaint* be served upon the defendant. *See* F.R.Civ.P. 4(c)(2)(C), 4(d).

The Debtor attempted to amend the Affidavit to add a reference to service of the "Complaint, Reissued Summons and Notice of Trial" upon the Defendant. If this amendment were merely corrective of the recitation in the original Affidavit, we would agree that amendment would be appropriate, because no "material prejudice" to the Defendant would appear. *See* F.R.Civ.P. 4(h); and 2 J. MOORE, FEDERAL PRACTICE, ¶ 4.44, at 4–417 to 4–420 (2d ed. 1993). The Defendant argues that the amendment should not be permitted in his Reply Brief, but fails to identify any

specific prejudice flowing to him from the allowance of the amendment.

However, the Counter–Affidavit of Pigott submitted by the Defendant throws considerable doubt upon the contention that the Complaint was actually served with the Summons. It will be recalled that the Defendant averred, in his Motion to Dismiss, that a complete copy of the Complaint was never received by him by mail, either. Therefore, a serious question is presented as to whether service upon the Defendant was not grossly defective under any applicable rules of service.

However, without resolving the dispute as to precisely what was served upon the Defendant, we conclude that the Trustee's purported means of service upon the Defendant failed to comply with Pa.R.Civ.P. 402(a)(2)(iii), or any other applicable rule of service appearing in the Pa.R.Civ.P. Therefore, we conclude that the Defendant has not been served according to F.R.Civ.P. 4(c)(2)(C)(i), or any other applicable F.R.Civ.P. Consequently, service under the terms of these rules, as well as pursuant to the Hague Convention procedures, has not been established by the Trustee or the Debtor.

### D. CONCLUSION

In our Orders of May 27, 1993, and June 17, 1993, and our comments at the colloquies of May 26, 1993, and June 16, 1993, we made clear to the Trustee and the Debtor that, in light of the patience extended by the court during their extended series of unsuccessful attempts at service upon the Defendant, the Defendant's Motion to Dismiss would be unconditionally granted if valid service were not made on him by June 15, 1993. Since the Trustee and the Debtor have failed in this endeavor, dismissal of the Complaint as to the Defendant must follow.

All of the parties defendant except Hoffman have now been dismissed from this proceeding. A status conference is scheduled on July 28, 1993, to determine whether the Trustee wishes to pursue this proceeding as to Hoffman only and, in light of this

determination, what future disposition of this proceeding is appropriate.