Steven **GOLUB,** Plaintiff,

v.

**ISUZU MOTORS,** American Isuzu Motors, **Inc.,** John Doe #2, and Takata Corporation, Defendants.

**Civil Action No. 95–12766–RCL.**

United States District Court, D. Massachusetts.

May 8, 1996.

---

Emmanuel N. Papanickolas, Peabody, MA, for Plaintiff.

Richard P. Campbell, William J. Thompson, Campbell & Associates, Professional Corporation, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

LINDSAY, District Judge.

This case is before the court on the defendant's motion to dismiss. For the reasons set forth below, the defendant's motion is DENIED. The plaintiff's service of process is quashed. The plaintiff is ordered to effect proper service in accordance with this order within sixty days of its issue.

### I. *Facts*

This is a product liability action involving a motor vehicle. The plaintiff, Steven Golub, was allegedly injured in a car accident. He claims his Isuzu truck was defectively designed and not crashworthy.

The defendant, Isuzu Motors, is incorporated in Japan. Japan is also its principal place of business. Golub attempted to serve Isuzu by mailing a copy of his complaint in English via registered mail.

Isuzu now moves to dismiss the case for insufficient service of process. Isuzu argues that service through the mail is not authorized by the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention" or "Convention"). 28 U.S.C.A., F.R.Civ.P. 4, at 210–229.

### II. *Analysis*

■ Japan and the United States are signatories to the Hague Convention. By virtue of the Supremacy Clause, U.S. Constitution, Art. VI, the Convention preempts inconsistent methods of service prescribed by state law in all cases to which it applies. *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 699, 108 S.Ct. 2104, 2107–08, 100 L.Ed.2d 722 (1988). Article I of the Convention states that it applies in all cases where there is occasion to transmit a judicial or extrajudicial document for service abroad. Such an occasion exists if the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad. *Id.* Rule 4(e) of the Massachusetts Rules of Civil Procedure requires such transmittal of documents. Therefore, the Convention applies to this case.

■ The purpose of the Hague Convention, as stated in its preamble, is to ensure that foreign addressees be served with process in timely manner. The Convention seeks to improve the organization of mutual judicial assistance for that purpose by simplifying and expediting the procedure for service of process.

Article 2 of the Convention provides that each signatory state shall provide a Central Authority which will receive requests for service originating in other states. Article 5 provides that the Central Authority shall itself serve the document or arrange to have it served in a manner compatible with the internal law of the country where service is to be made. Furthermore, Article 5 provides that the Central Authority may require such documents to be translated into the official language of the state addressed.

Article 10 states:

Provided the State of destination does not object, the present Convention shall not interfere with—

(a) the freedom to send judicial documents, by postal channels, directly to persons abroad,

(b) the freedom of judicial officers, officials, or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,

(c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Japan objected to subparagraphs (b) and (c) but not to subparagraph (a) of Article 10. 28 U.S.C.A., F.R.Civ.P. Rule 4, at 223, n. 13.

Courts have split on the issue of whether Article 10(a) authorizes service of process through the mail. *Compare Ackermann v. Levine*, 788 F.2d 830 (2nd Cir.1986) *and Cooper v. Makita, U.S.A., Inc.*, 117 F.R.D. 16 (D.Me.1987) *with Bankston v. Toyota Motor Corp.*, 889 F.2d 172 (8th Cir.1989); *and Borschow Hospital & Medical Supplies, Inc. v. Burdick–Siemens Corp.*, 143 F.R.D. 472 (D.P.R.1992).

▆▆▆ The starting point for interpreting a statute is the language of the statute itself. *Bankston*, 889 F.2d at 174, *citing Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive. *Id.* Similarly, where a legislative body uses terms that have acquired meaning under either equity or common law, a court must infer, unless the statute otherwise dictates, that the legislative body means to incorporate the established meaning of those terms. *NLRB v. Amax Coal Co.*, 453 U.S. 322, 329, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981). These principles of statutory construction apply with equal or even greater force when courts are called upon to interpret a treaty. When interpreting treaties, courts must be especially careful to follow the language and not to alter or insert any clauses. *Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 133–35, 109 S.Ct. 1676, 1683–84, 104 L.Ed.2d 113 (1989). To conclude here that the word "send" in Article 10(a) includes "service" would be inconsistent with the plain meaning of the language.

▆▆▆ Moreover, equally applicable to the construction of Article 10(a) is the familiar presumption that a legislative body acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another section of the same Act. *Bankston*, 889 F.2d at 174, *citing Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983). In this case, because the term "service" is used in other sections of the Hague Convention, including subsections (b) and (c) of Article 10, the court presumes that the drafters of the Convention would have used the word "service" in subparagraph (a) had they intended to provide an additional manner of service. *Id.* Specifically, Article 9 contains the phrase "forward documents, for the purpose of service". Articles 15 and 16 contain the phrase "transmission of judicial documents for the purpose of service." This language, in contrast to the phrase "freedom to send judicial documents" in Article 10(a), suggests that the drafters distinguished between sending judicial documents and sending judicial documents for the purpose of service. Therefore, the fact that Article 10(a) only speaks of sending judicial documents implies that it is not referring to the service of such documents. *Anbe v. Kikuchi*, 141 F.R.D. 498, 501 (D.Hawaii 1992).

Furthermore, it would be illogical for the drafters of the Convention to set up cumbersome and involved procedures for service of process, such as those ·in Article 5, if under Article 10 one could circumvent those procedures simply by sending something by mail directly to the other party. *Anbe*, 141 F.R.D. at 500. The court will not attribute such illogic to the drafters of the Convention.

▆▆▆ Finally, the fact that Japan did not object to Article 10(a) does not imply that Japan intended to consent to service via mail when it signed the Convention. Because Japan does not allow domestic service except through a court clerk, *see McClenon v. Nissan Motor Corp. in U.S.A.*, 726 F.Supp. 822, 825 (N.D.Fla.1989), it would be at least anomalous if Japan were to allow service from abroad to be effected through the mail. Furthermore, it seems implausible that Japan would object to the less intrusive provisions of 10(b) & (c) but consent to the more intrusive provision in 10(a). *Gallagher v. Mazda Motor of America*, 781 F.Supp. 1079, 1082 (E.D.Pa.1992). The court therefore concludes that Japan did not interpret Article 10(a) to authorize service of process through the mail when it decided not to object to that provision.

328

For the reasons set forth above, the court concludes that the Convention does not authorize service of process via mail in this case. However, because it appears that the plaintiff has stated a possible theory under which his action might be maintained in federal court, and because there appears to be a reasonable prospect that the plaintiff will ultimately be able to serve the defendant properly, the court sees no reason to dismiss the action.

The defendant's motion to dismiss is therefore DENIED. The plaintiff's insufficient service of process on the defendant is quashed. The plaintiff is ordered to effect service of process upon the defendant, via the designated Central Authority in Japan, within sixty days of this order's issue. If the Central Authority requires that the documents be translated into Japanese, the plaintiff must arrange to have that done.

So ordered.