IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 21, 2003

## GLENN BASHAM dba GLENN BASHAM NURSERY v. HENRY TILLAART, ET AL.

**Appeal from the Chancery Court for Grundy County**
**No. 4446    Jeffrey Stewart, Chancellor**

---

**No. M2002-00723-COA-R3-CV - Filed July 31, 2003**

---

The plaintiff, Glenn Basham, doing business as Glenn Basham Nursery, sued Henry Tillaart and Martin Tillaart ("the individual defendants"), who are identified in the complaint as Ontario, Canada businessmen, for monies due as a result of a commercial sale of nursery stock. The style of the complaint refers to the trade name of the individual defendants as "Dutchmaster Nurseries." Over six years later, the plaintiff moved the trial court to substitute a Canadian corporation, *i.e.*, "Dutchmaster Nurseries, Ltd.," for the individual defendants. The individual defendants moved to dismiss the complaint for "insufficiency of service of process." They also claimed that the plaintiff's cause of action was barred by the statute of limitation. The trial court denied the motion to amend. It granted the motion to dismiss the complaint. The plaintiff appeals, arguing that the motion to dismiss should have been denied and that he should have been permitted to amend his complaint to name the correct defendant. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Paul Cross, Monteagle, Tennessee, for the appellant, Glenn Basham dba Glenn Basham Nursery

John C. Harrison, Chattanooga, Tennessee, for the appellees, Henry Tillaart and Marlin Tillaart dba Dutchmaster Nurseries.

## OPINION

### I.

The original complaint was filed on June 8, 1994. In it, the plaintiff alleged that "he grows or otherwise markets nursery stock as a wholesale business enterprise." He averred that he operated

his business in Grundy County. The gravamen of the plaintiff's action is set forth in the third paragraph of the original complaint:

> That the [p]laintiff has since March of 1992 sold nursery stock to the [individual defendants] and that presently [they] owe the [p]laintiff $48,877.08, said amount represents what is due and owing and includes interest. Plaintiff has made numerous demands for payment and [d]efendants has [sic] refused to pay and continues [sic] to ignore demands for payment.

The plaintiff attempted service of process on the individual defendants through the Tennessee Secretary of State. The record reflects that service was also attempted as to "Dutchmaster Nurseries." In each case, service was directed to the address of "Locust Hill, Ont. Canada LOHIJO." By cover letters dated July 1, 1994, the Secretary of State transmitted to the trial court the original summons, the Secretary's affidavit and endorsement, and the return receipt for international mail, in each case. Each of the three return receipts was signed on June 22, 1994. The receipts were signed by an individual later identified as Betty-Anne Gifford. By her affidavit in the record, Ms. Gifford stated that she was an employee of "Dutchmaster Nurseries, Ltd"; that she was not and never had been an officer or director of the corporation; that she signed each of the three receipts; and that none of the receipts were signed by Henry Tillaart, Marlin Tillaart, or "any other employee or representative of Dutchmaster Nurseries Limited."[1] Her affidavit goes on to recite the following:

> On or about June 22, 1994, I was employed by Dutchmaster Nurseries Limited as a general laborer. My duties consisted primarily of outside work on Dutchmaster Nurseries' main farm such as loading and unloading vehicles and general labor. Office work was not a part of my ordinary duties at that time. From time to time, I was called upon to check a shipping or packing list as I loaded or unloaded a truck; however, the receipt, handling, and generation of paperwork was not a part of my ordinary duties. The receipt of documents transmitted by certified mail or regular mail was not a part of my ordinary duties.

> On or about June 22, 1994, I was working at Dutchmaster Nurseries Limited when I was approached by a postman who asked me to sign for some mail. In the bustle of activity prevailing at the moment, I signed for it. The postal employee who delivered the letters left immediately after I signed the [r]eturn [r]eceipt cards.

---

[1] Each of the return receipts contains a signature in addition to that of Ms. Gifford's. The signatures appear to be identical. Apparently, it is that of the postal worker who delivered the mail.

(Paragraph numbering in original omitted).  Ms. Gifford's affidavit fails to state what she did with the mail receipted for by her.

On November 28, 1994, plaintiff's original counsel filed a motion for default judgment on behalf of his client.  The motion does not contain a certificate of service on the individual defendants.  The record does not reflect any action by the trial court on this motion.

After retaining his present counsel, the plaintiff, on November 30, 1999, filed a new motion for default judgment.  On September 18, 2000, the individual defendants responded to the motion by filing their answer.  Among other things, the answer avers that the individual defendants had never personally engaged in "any contract, agreement, or other obligation between themselves and the [p]laintiff."  The answer then recites "that between 1992 and 1994, *Dutchmaster Nurseries, Ltd*., purchased certain nursery stock from the [p]laintiff, some of which was defective and/or damaged and properly rejected by said *corporation*."  (Emphasis added).

On September 29, 2000, the plaintiff filed his motion to substitute Dutchmaster Nurseries, Ltd., for the individual defendants.  On November 6, 2000, the individual defendants filed a response to the motion to amend, claiming prejudice resulting from the delay occasioned by what they referred to as the plaintiff's "inexcusable delay."  They asked the trial court to deny the motion.  On the same day, the individual defendants also filed their motion to dismiss the complaint for "insufficiency of service of process" and failure to state a claim upon which relief can be granted.  They claimed that the plaintiff's claim is "barred by the statute of limitations."

II.

In this case, materials outside the pleadings – affidavits and answers to interrogatories – were filed as a part of the record and not excluded by the trial court.  *See* Tenn. R. Civ. P. 12.02.  This being the case, the motion to dismiss is properly treated and disposed of as a motion for summary judgment.  ***Id***.  *See also **Owner-Operator Indep. Drivers Assoc. v. Concord EFS, Inc***., 59 S.W.3d 63, 68 (Tenn. 2001).  On appeal, such a motion presents only a question of law.  ***Robinson v. Omer***, 952 S.W.2d 423, 426 (Tenn. 1997); ***Byrd v. Hall***, 847 S.W.2d 208, 210 (Tenn. 1993).  Accordingly, our review is *de novo* with no presumption of correctness as to the trial court's judgment.  ***Id***.  The moving party – in this case, the individual defendants – are entitled to summary judgment if the facts properly before us reflect that there are no genuine issues of material fact and that the undisputed material facts show, without doubt, that the moving party is entitled to a judgment as a matter of law.  ***Id***.

III.

The plaintiff raises the issue of whether service of process on the individual defendants was insufficient as claimed by the defendants and as found by the trial court.  The parties agree that this question is controlled by the proper interpretation and application of The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("the

Hague Convention"). The Hague Convention is an international treaty that was formulated in 1964. *See* Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, *done at The Hague,* November 15, 1965, 20 U.S.T. 361. The treaty was intended to ensure that international defendants received actual and timely notice of foreign lawsuits pending against them; to facilitate proof of service abroad; and to simplify the procedures for international service of process. ***Volkswagenwerk Aktiengesellschaft v. Schlunk***, 486 U.S. 694, 698, 108 S. Ct. 2104, 100 L. Ed. 2d 722 (1988). The parties agree that both the United States and Canada are among the signatory countries to the Hague Convention.

IV.

Before addressing the pertinent requirements of the Hague Convention, we turn to the statute of limitations applicable to the facts of this case. Since this lawsuit concerns a commercial transaction pertaining to the sale of goods,[2] it is controlled by Tenn. Code Ann. § 47-2-725(1) (2001), a part of the Tennessee version of the Uniform Commercial Code:

> An action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued.

Thus, as to the suit against the individual defendants, the plaintiff's complaint was correctly dismissed unless it was filed within four years of the accrual of the plaintiff's cause of action and process was thereafter properly issued pursuant to Tenn. R. Civ. P. 3. It is clear that this suit was timely *filed* on June 8, 1994, since the face of the complaint reflects transactions with the individual defendants[3] in March, 1992.[4] It remains to be seen whether what transpired thereafter with respect to the issuance and service of process was insufficient, as found by the trial court, to establish the filing date of the original complaint as the date on which the statute of limitations was tolled as to the individual defendants.

---

[2]Pursuant to Tenn. Code Ann. § 47-2-105(1) (2001), "'[g]oods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (chapter 8 of this title) and things in action. 'Goods' also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (§ 47-2-107)."

[3]We recognize, as indicated earlier in this opinion, that the individual defendants deny being involved personally in any transactions with the plaintiff, but that is not the issue before us at this time.

[4]Since the filings of the individual defendants do not controvert this time allegation, we must accept it as true.

V.

We now turn to the Hague Convention and its effect on the facts of this case. Because we find the brief of the individual defendants to be an excellent and correct recitation of the law on this subject, we will borrow from it liberally without further attribution.

Under the Hague Convention, service of leading process must be made through the foreign country's designated Central Authority. The Hague Convention, Art. 2, 20 U.S.T. 361. Canada has designated the Ministry of the Attorney General for Ontario ("Ministry") as the Central Authority for Ontario. *See* Canadian Designations and Declarations, made pursuant to Art. 21 of the Hague Convention. Documents to be served upon a Canadian defendant must be sent to the Ministry with a request for service. The Hague Convention, Art. 3, 20 U.S.T. 361. After receiving the judicial documents, the Ministry must arrange to serve the documents in a manner prescribed by the internal law of Ontario, Canada. *Id*., Art. 5.

Plaintiff failed to comply with the Hague Convention's provisions requiring service of process through Canada's Central Authority. Instead of sending the appropriate documents to the Ministry of the Attorney General for Ontario, plaintiff sent the papers to the Tennessee Secretary of State. Nothing in the Hague Convention permits, or even contemplates, service of process through the Tennessee Secretary of State.

The Tennessee Secretary of State, at plaintiff's direction, attempted to effect service of process by sending a summons and a copy of the complaint to each of the individual defendants by direct mail. Service of process by direct mail is not permitted under the Hague Convention.[5] *See, e.g.*, ***Bankston v. Toyota Motor Corp***., 889 F.2d 172, 174 (8th Cir. 1989); ***Golub v. Isuzu Motors***, 924 F. Supp. 324, 327 (D. Mass. 1996); ***Wilson v. Honda Motor Co.***, 776 F. Supp. 339, 342 (E.D. Tenn. 1991 ); ***Fleming v. Yamaha Corp***., 774 F. Supp. 992, 996 (W.D. Va. 1991); ***Wasden v. Yamaha Motor Co.***, 131 F.R.D. 206, 208 (M.D. Fla. 1990).

Plaintiff mistakenly cites Article 10 of the Hague Convention to support his argument that service by direct mail was sufficient. Article 10(a) declares that "provided the State of destination does not object, the present Convention shall not interfere with ... the freedom to *send* judicial documents, by postal channels, directly to persons abroad..." (Emphasis added). In citing this provision, plaintiff fails to recognize the distinction between serving original or leading process to properly notify foreign defendants of a pending action on the one hand and the sending of other judicial documents after the initial service of process on the other. *See **Bankston***, 889 F.2d at 173; ***Wilson***, 776 F.Supp. 341-42; ***Wasden***, 131 F.R.D. at 208-09. Many courts have concluded that Article 10(a) "simply provides a method of sending subsequent documents after service of process has been obtained through the Central Authority." ***Wilson***, 776 F.Supp. at 341-42; see also ***Bankston***, 889 F.2d at 173; ***Golub***, 924 F.Supp. at 327; ***Gallagher v. Mazda Motor of Am., Inc***.,

---

[5]As will be seen later in this opinion, a local jurisdiction may authorize service by mail pursuant to local rule. *See* Rule 16.03(4), Ontario Rules of Civil Procedure.

781 F.Supp. 1079, 1082 (E.D. Pa. 1992); *Fleming*, 774 F.Supp. at 996; *Wasden*, 131 F.R.D. at 209; *O'Halloran v. Milehouse Inv. Mgmt. Ltd. (In re Greater Ministries Int'l, Inc.*), 282 B.R. 496, 502-03 (Bankr. M.D. Fla 2002). It is clear that Article 10 does not permit service of leading process by direct mail.

Even if service of process by direct mail were permissible under the Hague Convention, the service in the instant case would still be deficient. The Hague Convention requires a plaintiff to serve process in a manner authorized under the foreign jurisdiction's law. *Hunt's Pier Assocs. v. Conklin (In re Hunt's Pier Assocs.)*, 156 B.R. 464, 470 (Bankr. E.D. Pa. 1990). As previously mentioned, the individual defendants are located in Ontario, Canada. Under Rules 16.01 and 16.03, Ontario Rules of Civil Procedure, an individual defendant may be served with originating process in three ways: (1) personal service on the individual defendant; (2) service at the individual's place of residence by leaving a copy of the originating process with an adult member of the residence and by mailing a copy of the originating process to that address on the same or following day; or (3) service by mail to the defendant's last known address, accompanied by an acknowledgment of receipt card prescribed by the Ontario Rules of Civil Procedure. In the present case, the plaintiff directed the Tennessee Secretary of State to send originating process by direct mail to the individual defendants' *place of business/employment*. The Ontario Rules of Civil Procedure do not permit service of leading process on an individual by mail to a place of business. *Conklin*, 156 B.R. at 471. Even where Ontario law permits service of process by mail, *see* Ont. R. Civ. P. 16.03(4), the mailing must contain an acknowledgment of receipt card in the form specified by Form 16A, Ontario Rules of Civil Procedure. Form 16A is as follows:

Acknowledgment of Receipt Card (General heading)

TO (full name)

You are served by mail with the documents enclosed with this card in accordance with the Rules of Civil Procedure.

You are requested to sign the acknowledgment below and mail this card immediately after you receive it. If you fail to do so, the documents may be served on you in another manner and you may have to pay the costs of service.

ACKNOWLEDGMENT OF RECEIPT

I ACKNOWLEDGE that I have received a copy of the following documents: (To be completed in advance by the sender of the documents. Include sufficient particulars to identify such documents).

Signature of person served

Service under Rule 16.03(4), Ontario Rules of Civil Procedure, is only effective when the sender receives the signed acknowledgment of receipt card back from the defendant. *See Conklin*, 156 B.R. at 471. It is undisputed that plaintiff did not provide the acknowledgment of receipt card required by the Ontario Rules of Civil Procedure.

Moreover, the summonses and complaints sent by direct mail were received by Betty-Anne Gifford, a laborer at the individual defendants' place of business/employment. Ms. Gifford is not an authorized agent for service of process for the individual defendants or Dutchmaster Nurseries, Ltd. She is not an officer or agent of Dutchmaster Nurseries, Ltd. Receipt of service documents by Ms. Gifford would be insufficient to effect service of process upon the corporation, much less upon the individual defendants. *See Jerge v. Potter*, Docket No. 99-CV-0312E(F), 2000 WL 1160459, at *1 (W.D.N.Y. Aug. 11, 2000) (under Ontario law, receptionist is not agent for service of process on corporation).

Plaintiff's attempted method for service of process even fails to satisfy the standard established by the Tennessee Rules of Civil Procedure for service *within the state*. Under Tennessee law, service of process can be made upon such an individual:

> by delivering a copy of the summons and of the complaint to the individual personally, or if he or she evades or attempts to evade service, by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age or discretion then residing therein . . ., or by delivering the copies to an agent authorized by appointment or by law to receive service on behalf of the individual served.

Tenn. R. Civ. P. 4.04(1). Plaintiff's attempted method of service does not comply with any part of Rule 4.04(1). The record contains no suggestion that the individual defendants attempted to evade service of process. Therefore, personal service is the preferred method under Tennessee law. At any rate, nothing in Rule 4.04(l) permits a plaintiff to serve process by sending documents to an individual's place of business, thereafter to be receipted for by an employee who is not an authorized agent for service of process. *Cf. Edwards v. Campbell*, C/A No. E2000-01463-COA-R3-CV, 2001 WL 52776, at *5 (Tenn. Ct. App. E.S., filed January 23, 2001) (leaving summons and complaint at defendant's residence with person not shown to be then residing therein constitutes insufficient service of process). Speaking hypothetically, had the process in the instant case been served on someone such as Ms. Gifford at the individual defendants' place of employment in Tennessee, such service would not have been sufficient.

The fact of the matter is that service of process on the individual defendants in the instant case was deficient in a number of ways. The service was clearly insufficient.

VI.

The plaintiff argues that the facts before us demonstrate that Marlin Tillaart, within two months of the filing of the suit against him and Henry Tillaart, was aware that the lawsuit had been filed. This assertion is based upon the affidavit of Rick Jennings, who is identified in the affidavit as an employee and agent of the plaintiff. Jennings states that within two months of the commencement of this action, he received a "hostile" telephone call from Marlin Tillaart in which the latter, in the affiant's words, "acknowledg[ed] the existence of this lawsuit and vow[ed] not to pay plaintiff anything, even if a judgment were to be granted."

In his affidavit, Jennings says that he had met Marlin Tillaart in person, had talked to him on the phone many times, and that Marlin Tillaart was "the person at Dutchmaster Nurseries with whom he (directly) negotiated all sales, over a period of several years, up to and including the 1993 sales season." Assuming all of this to be true, as we must in this summary judgment analysis, nevertheless we find that such assumed actual knowledge is immaterial in this case. This is because there is no provision in the Hague Convention, in the absence of evasion of service, which permits service to be accomplished by way of actual notice of the suit in lieu of proper service under its provisions. ***O'Halloran***, 282 B.R. at 501. As we have previously indicated, the 1994 attempted service does not satisfy any of the acceptable methods of service under the applicable law of the Province of Ontario, Canada. It results that the assumed actual notice is immaterial in our summary judgment analysis.

Finally, the plaintiff points out that there are affidavits in the record reflecting that alias process was issued in this matter on July 28, 2000, and personally served on both Henry Tillaart and Marlin Tillaart on August 18, 2000. As to the original complaint, this process was not timely issued. Its issuance clearly was not in compliance with Tenn. R. Civ. P. 3. This assumed service on these two defendants was not effective to toll the statute of limitations as to the plaintiff's cause of action against the individual defendants.

We hold that the plaintiff's cause of action against the individual defendants is barred by the statute of limitations.

VII.

The plaintiff complains that the trial court erred in failing to grant his motion to amend to substitute Dutchmaster Nurseries, Ltd., for the individual defendants. He correctly points out that Tenn. R. Civ. P. 15.01 requires that "leave [of court to amend] shall be freely given when justice so requires." Furthermore, the plaintiff contends – and there are facts before us to substantiate – that the relation back requirements of Tenn. R. Civ. P. 15.03 have been satisfied in this case. The plaintiff argues from this that the proposed amendment "relates back to the date of the original [complaint]." ***Id***. Thus, he seems to contend that the amendment, had it been allowed, would not be barred by the statute of limitations.

In this summary judgment analysis, we must assume, based on the facts before us, that the relation back requirements of Tenn. R. Civ. P. 15.03 have been satisfied as to the proposed amendment. This rule, however, must be read and interpreted *in pari materia* with other relevant portions of the Rules of Civil Procedure. *See, e.g., **Frye v. Blue Ridge Neuroscience Ctr., P.C.**,* 70 S.W.3d 710, 716 (Tenn. 2002); ***LensCrafters, Inc. v. Sundquist***, 33 S.W.3d 772, 777 (Tenn. 2000); ***Carver v. Citizen Utils. Co.***, 954 S.W.2d 34, 35 (Tenn. 1997); ***Cronin v. Howe***, 906 S.W.2d 910, 912 (Tenn. 1995). *See also **First Tennessee Bank, N.A. v. Dougherty***, 963 S.W.2d 507, 508 (Tenn. Ct. App. 1997) (citing, ***Dep't of Human Servs. v. Vaughn***, 595 S.W.2d 62, 63 (Tenn. 1980) (stating that the rules of civil procedure are "laws" and are to be interpreted in the same manner as statutes)).

Particularly pertinent to the issue pertaining to the Tenn. R. Civ. P. 15.03 relation back doctrine, are the provisions of Tenn. R. Civ. P. 3 as they existed at all times pertinent to this case.[6] It is clear that under Rule 3 and The Hague Convention, the filing of the plaintiff's complaint did not toll the statute of limitations as to his cause of action against the individual defendants. As previously indicated, process as to the individual defendants was not properly served on them and it is clear, beyond any doubt, that subsequent process was not timely issued under Rule 3. Thus, even assuming that the plaintiff's motion to amend satisfies the requirements of Rule 15.03 and that the plaintiff's claim against Dutchmasters Nurseries Ltd., relates back to the date of filing of the original complaint, it would be anomalous for us to hold that the filing of the original complaint was not effective to toll the statute of limitations as to the claim against the original defendants, but, nevertheless, could be used as a benchmark for determining whether the claim against the defendant sought to be added by the amendment was timely filed. When we read Rule 15.03 in conjunction with Rule 3, we are persuaded that such a conclusion would be untenable. Accordingly, we conclude that the desired effect of Rule 15.03 – relation back in order to come within the statute of limitations – can only be applicable if the original filing to which it seeks to be related pertains to a cause of action that is, at the time of the proposed relation back, still a viable cause of action. This was not

---

[6]Tenn. R. Civ. P. 3, as it existed prior to the amendment effective July 1, 1995, provided as follows:

> All civil actions are commenced by filing a complaint and summons with the clerk of the court. An action is commenced within the meaning of any statute of limitations upon such filing of a complaint and summons, whether process be issued or not issued and whether process be returned served or unserved. If process remains unissued for 30 days or if process is not served or not returned within 30 days from issuance, regardless of the reason, the plaintiff cannot rely upon the original commencement to toll the running of a statute of limitations unless the plaintiff either: (1) Continues the action by obtaining issuance of new process within 6 months from issuance of the precious process or, if no process issued, within 6 months from the filing of the complaint and summons, or (2) Recommences the action within 1 year from issuance of the original process or, if no process issued, within 1 year from the filing of the original complaint and summons.

Since the original complaint was filed on June 1, 1994, the pre-July 1, 1995, version of the rule was in effect during the entire period of time that the issuance of new process or the recommencement of the action would have been required.

the situation in the instant case; the original cause of action was barred by the statute of limitations at the time of the proposed relation back. That action was no longer viable.

Since the proposed amendment clearly could not have survived a motion to dismiss based upon the statute of limitations, we find no abuse of discretion in the trial court's failure to grant the plaintiff's motion to amend. *See **Burton v. Carroll County***, 60 S.W.3d 829, 832 (Tenn. Ct. App. 2001).

VIII.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant Glenn Basham. This case is remanded to the trial court for collection of costs assessed there, pursuant to applicable law.

_____
CHARLES D. SUSANO, JR., JUDGE